408 So.2d 288 (1981)
TEXAS GENERAL PETROLEUM CORPORATION, Plaintiff-Appellant,
v.
C. A. BROWN and Robert J. Brown, Defendants-Appellees.
No. 14714.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*289 John M. Frazier, Shreveport, for plaintiff-appellant.
Gamble & Sledge by Jack R. Gamble, Jr., Mansfield, for defendants-appellees.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this action to recover money paid in error, the plaintiff-mineral lessee appeals a judgment rejecting its demands. The money was bonus money paid to two defendants-lessors for the leases.
Unless the warranty is expressly excluded, a mineral lessor warrants title to the interest he leases, and the lessee may recover the bonus paid for a lease if the warranty of title is breached. LRS 31:120. Each lease excluded warranty against pre-existing leases, the existence of which were known by lessee. At lessors' insistence, this exclusion was typewritten on the lease form, a Bath form 14 BR1 2A PX 10-65:
"Lessor does not warrant this lease against pre-existing leases which may still be in effect, not even for return of bonus monies."
The trial court admitted parol evidence which conflicted on the question of whether lessors agreed that the drafts given for the leases would not be paid until plaintiff-lessee succeeded in obtaining releases of the pre-existing leases. The trial court effectively held that the warranty exclusion negated any parol evidence that tended to show that the bonus was paid in error.[1] For reasons we assign, we affirm the judgment.
*290 Plaintiff's principal office is in Houston. Plaintiff's employee, Vaughn, employed two landmen-agents to negotiate the leases. These agents did not testify. The leases and the drafts given for the leases were dated in mid-May 1978. The drafts were drawn by one of the landmen on the account of Royal Resources Exploration, Inc. of Denver, in a Denver bank. Each draft stated:
"Upon approval of lease ... described herein, and on approval of title to same by drawee not later than 60 days after arrival of this draft at collecting bank, PAY TO THE ORDER OF ..."
On May 28, 1978, each defendant endorsed his draft "for deposit" and placed it for collection with his Louisiana bank.
On July 20, 1978, plaintiff wrote defendants this proposed letter agreement regarding the release of the pre-existing leases and sought defendants' acceptance of the proposal:
"I appreciate ... the opportunity ... to explain the problems we have had in accomplishing... release of the former oil and gas leases.
"... We would like to use an outside attorney to ... formal[ly] demand ... the release ... and make arrangements to lease the property under the terms we discussed.
"Texas General Petroleum Corporation will pay the outside attorney's fees as consideration for your obtaining the various oil and gas leases on the terms previously discussed, namely as a 3 year term, $50 per acre Bonus, $1 per year rental and 1/8 royalty.
"We propose to use [a named Shreveport attorney] ... It would be necessary for you to execute a form authorizing [this] attorney to act in your behalf. * * * * * *
"If this is agreeable ... [this attorney] will prepare and forward to you the form authorizing him to proceed as soon as you have executed a copy of this letter in the space provided and [have] returned it."
This letter was signed "Agreed and Accepted" by each defendant.
On July 29, 1978, the collecting bank at Denver paid each draft. Vaughn testified that if the collector bank had contacted him as it "should have", he would have told the bank, "I don't want the deal, dishonor the draft." Neither Vaughn's name nor plaintiff's name was on the draft, but plaintiff's name was on the lease attached to the draft. Vaughn testified that he hired the Shreveport attorney to work in the name of defendants to attempt to obtain the desired releases because the 60-day period mentioned in the drafts was about to elapse and that he wanted to maintain his contact with and continue the cooperation of defendants.
The drafts show that they were stamped "received, Royal Resources," on June 1, 1978, a date which corresponds with the May 28 date the defendants placed the drafts with their Louisiana bank. On August 18, 1978, the Shreveport attorney referred to in plaintiff's July 20 letter wrote to defendants and Vaughn that he was proceeding as instructed in defendants' names to compel release of the pre-existing leases. Other correspondence in the record, dated in September 1978, replies to the Shreveport attorney's demand for releases and asserts that the leases that releases of were requested, were held in force and effect by production. The Shreveport attorney testified that he did succeed in getting releases on either 40 or 80 acres of the 237 acres leased to plaintiff. The attorney also testified that he was not aware that the leases to plaintiff had actually been executed or that drafts had been given to defendants by plaintiff. Vaughn knew this but obviously did not tell this to the attorney.
Plaintiff or its agents recorded the leases in the conveyance records of DeSoto Parish on October 25, 1979, 16 months after the collector bank paid the drafts. The blank in the monetary consideration paragraph of the lease form does not reflect the oft-used term "$10 and OVC", but recites "$10 and no/100". The bonuses actually paid by the drafts were $6,000 and $5,850 to the respective defendants.
*291 Defendants are father and son. The son conducted the negotiations for both. He testified that he received a telephone call [that Vaughn said he made] about the drafts being paid by mistake. Defendants said that they executed the letter agreement after the telephone call. The Shreveport attorney hired by Vaughn wrote defendants on August 18, 1978, that he had been requested by plaintiff, at plaintiff's expense, to attempt to secure the releases and that he understood that defendants had authorized him to represent them. The date of this letter corresponds with and corroborates defendants' testimony that they signed the July 20 letter agreement after they learned in an August 3, 1978, bank statement that the drafts had been honored. Defendant was asked:
"Was [plaintiff's telephone call that the drafts were paid by mistake] in accordance with your understanding that the money wouldn't have been paid if they couldn't release the property?"
Defendant answered:
"We didn't go into that as I recall. I said, `write me a letter stating your contention and I will consult an attorney,' and they didn't write. They entered suit."
This action was filed November 14, 1979, about 15 months after the telephone call and the letter agreement in 1978.
The letter agreement of July 20, 1978, was written by Vaughn to defendants. Vaughn then knew that the 60-day period on the drafts was running and was part of his purpose in writing the defendants. He knew that the leases had been signed in mid-May by defendants. Yet he wrote:
"[Plaintiff] will pay the ... attorney's fees as consideration for your obtaining the various oil and gas leases on the terms previously discussed, namely as a 3 year term, $50.00 per acre bonus, $1 per year rental and 1/8 royalty."
If Vaughn's purpose was to extend the 60-day period given in the drafts and gain more time for plaintiff, he failed to clearly state this purpose. Defendants could not obtain leases of their own property as the letter agreement says, except by granting to plaintiff a lease excluding warranty against pre-existing leases as they had already done, because the property was already leased. Defendants knew this and, more importantly, Vaughn knew it. The warranty exclusion was placed in the lease at defendants' insistence.
Where no specific findings of fact are made by the trial court, we are required to view the evidence in a light most favorable to appellees and in support of the judgment. Ford Motor Credit Co. v. Diffey, 378 So.2d 1032 (La.App.2d Cir. 1979). If we fully consider the parol evidence, as plaintiff insists, that evidence does not support or necessarily lead to the conclusion that defendants would not be paid bonuses unless plaintiff succeeded in releasing the pre-existing leases. The lease does not say this. The letter-agreement dated before, executed by plaintiff before, and by defendants after, the drafts were honored does not say this.
While defendant acknowledged the plaintiff attorney's general proposition that there would be no bonus money if plaintiff did not obtain the desired releases, the totality of defendants' testimony is to the effect that plaintiff was given 60 days to satisfy itself that its legal department could obtain the desired releases and that defendants would be notified by the bank at the end of the 60-day period whether the draft was or was not honored, and if the draft was honored, and even if plaintiff did not succeed in getting the desired releases, then defendants would not have to return any bonus money to plaintiff because of the express exclusion of the warranty in the lease.
The terms of the lease and the language of the drafts strongly support the conclusion that plaintiff had 60 days to decide whether it could succeed in getting the desired releases. Vaughn could have removed any risk to plaintiff simply by informing the collector bank within the 60-day period that plaintiff did not want the deal and to dishonor the draft. Whether that bank *292 sought the approval of anyone before it honored the draft on July 29, 1978, approximately 60 days after it was presented to the Louisiana bank, is not shown and is of no concern in this action.[2] Vaughn testified that he filed a "claim" against that bank in banking channels.
Under these circumstances, and whether or not parol evidence is admissible and "fully considered", as plaintiff asserts in its assignment of error, plaintiff has not proved its case that the bonuses were paid in error. Whether money paid by mistake can be recovered appears to depend in part on the nature and degree of the mistake. A grossly careless mistake which could have been avoided by ordinary diligence is to be distinguished from the mistake that reasonable minds would conclude is sometimes made even by reasonable persons in the ordinary course of business. See Metropolitan Life Ins. Co. v. Mundy, 167 So. 894 (La.App. 1st Cir. 1936).
The drafts could be construed as suspending the order to the bank to pay for 60 days. See footnote 2. Plaintiff must be held to have known of the language of the drafts and the receipt of the drafts by the Denver bank.
In answer to the appeal, defendants claim that the appeal is frivolous and seek attorney fees and damages. While we have found appellant's assignments of error to be without merit, we cannot say they are without foundation in law or in fact. We do not find that the appeal was taken solely for the purposes of delay and deny appellees' claim for damages and attorney fees.
At the cost of appellants, judgment is AFFIRMED.
NOTES
[1] Mineral leases must be in writing and are subject to the parol evidence rule. Bills v. Fruge, 360 So.2d 661 (La.App.3d Cir. 1978). See also Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963); American Oil Co. v. Roland J. Robert, Distributor, Inc., 220 So.2d 144 (La. App. 1st Cir. 1969); CC Arts. 2276, 2278. Parol evidence, however, is admissible in an action to recover a payment made that was not due. This action is treated specially in the Civil Code. See Articles 2301-2314, 2133.

A thing has been paid when not due, if the payment was made under an agreement that was suspended by a condition, the event of which is uncertain. CC 2308. This conditional and suspensive effect does not extend, however, to a condition which is certain to occur such as a period of time. CC 2309. See also CC 2049, 2051.
[2] Parenthetically, we observe that a draft payable upon approval of a title by the drawee not later than 60 days most probably becomes an instrument payable on demand when the 60 day term has elapsed without any contrary order to the bank by the drawee during that time. See LRS 10:3-503, 3-109, 3-506. Compare J. Pound's opinion, Irving Trust Co. v. Leff, 253 N.Y. 359, 171 N.E. 569 (1930).