488 So.2d 322 (1986)
Roger D. BROWN, et al., Plaintiffs-Appellees,
v.
M.L. MAYFIELD, et al., Defendants-Appellants.
No. 85-431.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*323 Preston N. Aucoin, Ville Platte, for defendants-appellants.
B.J. Manuel, Mamou, for plaintiffs-appellees.
Before DOMENGEAUX and YELVERTON, JJ., and JACKSON, J. Pro Tem.[*]
YELVERTON, Judge.
This is an appeal taken by the defendants, M.L. Mayfield Company and M.L. Mayfield, individually, from the granting of a motion for summary judgment in favor of the plaintiffs Roger Brown and Chester Guillory. Plaintiffs, the landowners of a certain tract of land situated in Evangeline Parish, sought to cancel the mineral lease held by the defendants who are the sublessees of Gulf Oil Corporation. The motion for summary judgment was based on a quit claim executed by Gulf in favor of plaintiffs which, it was asserted, terminated the rights of the defendants who held their lease under Gulf. The motion was granted and defendants appealed. We affirm.
Plaintiffs are the owners of 140 acres, Guillory owning the north half and Brown the south, described as follows:
"A certain tract or parcel of land, together with all improvements thereon, situated in Evangeline Parish, Louisiana, containing seventy (70) acres more or less, and being the South Half of a certain tract containing one hundred forty (140) acres, more or less, lying substantially in the Southeast Corner of Sec. 25, and the Northeast Corner of Sec. 37, T-3-S, R-1-W, La.Mer., and being the same property acquired by Vendor for Ulfay Guillory on Dec. 26, 1967."
The tract of land involved here was originally owned by Evangeline Land & Mineral Co., Inc. In 1940 Evangeline leased this and many other tracts to the Gulf Oil Corporation (then Gulf Refining Company) for the production of oil, gas or other minerals. In 1951 Gulf "assigned" the lease to M.L. Mayfield, as was its right under the contract with Evangeline.
The document executed between Gulf and Mayfield provided that Mayfield was to account to Gulf for 50% of the net profits on a monthly basis. It also provided that Mayfield had no right to release the lease, and was obligated to reassign the lease to Gulf should Mayfield desire to give it up.
Ownership of the land was eventually acquired by Guillory and Brown, the plaintiffs. They filed this suit in September of 1981 on the grounds that there had been no drilling or production on the land, or if there was drilling or production, no royalties had been paid. When the plaintiffs filed this suit defendants excepted that indispensable or necessary parties had not been made parties to the suit. The allegedly indispensable or necessary parties *324 were Gulf Oil, Inexco Oil, and Charles Dannelly. The latter two parties owned working interests in the lease acquired from the Mayfields.
On August 29, 1983, Gulf Oil Corporation, successor to Gulf Refining Company, executed a quit claim of all of its right, title and interest in this property. By means of an identical instrument on December 15, 1983, Charles G. Dannelly, who had earlier acquired a working interest in the lease from the Mayfield interests (to which Gulf Oil Company consented), released and quit claimed all of his right, title and interest to the property. Finally, on February 9, 1984, Inexco Oil Company, sublessee of Dannelly, granted a release of its rights covering the property.
These three above described instruments not only solved the questions raised by the exceptions of nonjoinder, but the quit claim of Gulf also furnished the basis for the motion for summary judgment with which we are presently concerned.
Plaintiffs filed the motion for summary judgment in February 1985, pursuant to La.C.C.P. art. 966, alleging that there was no genuine issue as to material fact and that they were entitled to judgment as a matter of law canceling the lease. Shortly after the filing of this motion, the defendants filed a third party demand for damages against Gulf, Inexco and Danelly. This third party demand is not before us; we mention it simply to indicate that all parties are in the suit and apparently know what is going on.
After the trial judge granted summary judgment declaring the lease cancelled, the Mayfields appealed, and the precise issue before us is whether Gulf's quit claim effectively terminated the Mayfield lease.
We initially find that the document executed between Gulf and Mayfield was a sublease though styled an assignment. The cases are clear that where the lessee retains some interest in the lease the contract is one of sublease. See Cameron Meadows Land Co. v. Bullard, 348 So.2d 193 (La.App. 3rd Cir.1977), and cases cited therein. See also La.R.S. 31:127 and the comments thereunder. Gulf's retention of 50% net profits and reversion rights clearly makes the relationship one of sublease rather than assignment.
As a consequence of this finding, the rules pertaining to sublease in general apply. One such rule is that the rights under a sublease are secondary to the primary lease, and a sublease ceases to exist at the moment the primary lease is dissolved. Ogden v. John Jay Esthetic Salons, Inc., 470 So.2d 521 (La.App. 1st Cir. 1985). The question then presented is whether the quitclaim deed executed by Gulf dissolved the lease in its entirety, or dissolved only those rights in the lease retained by Gulf.
A situation not unlike, but also distinguishable from ours, was faced by the Louisiana Supreme Court in the case of Scurlock Oil Company v. Getty Oil Company, 294 So.2d 810 (La.1974). In that case the court looked to the lease provisions, the language of the release and other circumstances in an effort to determine whether there was an intent to release only the lessee's retained rights, or whether the intent was to also release the rights of the sublessee. The court found it unnecessary to determine whether originally there had been an assignment or a sublease. The court found that the clear intent of the release was to release only the retained rights. Instrumental to the decision was a letter written by one of the parties referring to "the release of your retained rights." Also important was the fact that the release instrument itself did not purport to release any rights other than those of the releasing party. No reference was apparently made in the release concerning the rights of those holding under the releasing party.
The circumstances of the present case are different. The quit claim deed expressly releases all of Gulf's right, title and interest in the property, and further expressly states that "Neither we nor our successors, legal representatives or assigns shall have, claim or demand any right or *325 title to the aforesaid property, premises or appurtenances or any part thereof." The fact that this document was executed by Gulf with the knowledge that suit had been instituted to cancel the sublease suggests that Gulf was fully aware of the consequences of its action. Also important is the amount of control Gulf maintained over the sublessee. Gulf was to derive 50% of the net profits on a monthly basis. The lease provided for a joint accounting procedure by which all books, records and accounts were to be kept. Gulf's consent was required for the sale or processing of gas and for charges to the joint account of over $1,000. The sublessee had no right to release the lease or let it expire. Gulf had a first option to purchase oil, and had the right to inspect logs, samples, cores and cutting from all wells drilled. Section VII, Paragraph 9 of the Gulf sublease provided:
"Grantee [Mayfield] shall neither release, surrender nor abandon the aforesaid leases, nor allow the same to expire under their own terms, without the written consent of the Grantor [Gulf]; however, should Grantee [Mayfield] desire to surrender, release or abandon said leases, or any of them, or allow them to expire under their own terms, it shall give the Grantor [Gulf] forty-five (45) days written notice of such intention and if Grantor [Gulf] fails or refuses to consent in writing to such release, surrender or abandonment within thirty (30) days after receipt of such notice, then Grantee [Mayfield] shall reassign to Grantor [Gulf] such lease and be thereby relieved of all future obligations hereunder." (Bracketed inserts provided.)
Considering all of these circumstances Gulf's intent was clearly to release not only its retained rights in the lease but also all full rights it had in the lease including the rights held by its sublessee, the Mayfield interests.
We recognize that what Gulf intended to release by its quit claim is a question of intent, and that it is often inappropriate for summary judgment to be the proper vehicle for deciding issues that involve the intent of parties to a contract. Nevertheless, as stated by our brothers of the Fourth Circuit in Sally Beauty Company v. Barney, 442 So.2d 820 (La.App. 4th Cir.1983):
"Summary judgment is often inappropriate to show the intent of parties to a contract. Nettles v. Bowlin, 386 So.2d 658 (La.App. 1st Cir.1980), Hall v. Management Recruiters of New Orleans, Inc., 332 So.2d 509 (La.App. 4th Cir.1976), Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981). However, under these facts the intent is clear. There are no uncertainties that require the trial court to go beyond the evidence. See Dixie Campers, supra. Mere formal allegations without substance will not preclude the granting of summary judgment. `When the evidence submitted on the motion leaves no relevant, genuine issue of fact, and when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court, the motion for summary judgment should be granted.' Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc., 346 So.2d 743, 748 (La.App. 1st Cir.1977). LSA-C.C.P. Art. 966, 967."
For these reasons, the judgment below is affirmed at appellants' costs.
AFFIRMED.
NOTES
[*] Judge Robert P. Jackson of the Ninth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.