DEL-RAY OIL & GAS, INC., Plaintiff,

v.

HENDERSON PETROLEUM
CORPORATION, et al.,
Defendants.

HENDERSON PETROLEUM CORPO-
RATION, a Nevada Corporation,
Plaintiff-Appellee,

v.

LISKOW & LEWIS, A Partnership, et
al., Defendants-Appellants.

No. 85–4717.

United States Court of Appeals,
Fifth Circuit.

Aug. 22, 1986.

William D. Brown, Brown & Amman, Ralph J. Wicker, Monroe, La., for defendants-appellants.

Murray Ogborn, Nelson & Harding, Lincoln, Neb., Herman, Herman, Katz & Cotlar, Russ M. Herman, New Orleans, La., Pershing J. Latour, Donaldsonville, La., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG, and GARWOOD, Circuit Judges.

PER CURIAM:

### I

On February 24, 1981, William H. Krutzer, III with his wife (Krutzer) and Del-Ray Oil and Gas Company (Del-Ray) each purchased a forty-nine percent interest in three mineral leases, the "Broussard lease" and two "Landry leases." Krutzer and Del-Ray intended to resell these lease interests to Henderson Petroleum Corporation (Henderson), pursuant to prior negotiations with Henderson. Pershing J. Latour and his wife (Latour) held the remaining two percent interest in these leases.

The Broussard lease contained a sixty-day cessation of operations clause. According to its provisions, the lease would terminate sixty days after the cessation of operations in paying quantities unless production resumed or "reworking operations" commenced within that time. The Landry leases contained ninety-day cessation of operations clauses with substantially the same provisions.

The Broussard well ceased to produce in paying quantities on February 22, 1981. In late February and early March, Krutzer paid for repairs to the single-stage compressor, which was an integral part of the well production equipment. The repairs did not restore the well to production. William Davis, Henderson's chief engineer, and Krutzer inspected the well on March 11. The well was not producing at all on the day of the inspection. Both men knew it had produced only an insignificant amount of gas on the previous day's attempt to produce with the repaired compressor.

Krutzer, Del-Ray, Henderson, and their attorneys met on May 5. At that meeting, they signed a previously drafted letter agreement concerning the sale of the lease interests to Henderson. This letter agreement provided that Krutzer and Del-Ray would warrant title. It also limited the extent of damages for failure of title to the funds paid. They then executed documents transferring title to the leases that specifically excluded warranty of title. Krutzer retained a one-sixteenth working interest in the property.

Latour transferred his two percent interest to Henderson on June 10. The single transfer instrument that Henderson and Latour executed specifically excluded any express or implied warranty. Latour transferred all his rights in the leases to Henderson without reservation of any interest.

The lessor assumed the lease had expired when he did not receive any royalty checks for several months. He leased the tract to Walter Lanaux in early June. Lanaux filed his lease of record on June 4. Henderson and Krutzer first actually learned of Lanaux's interest on June 18 or 19.

Several lawsuits were then filed by these parties. All actions were consolidated for trial in the United States District Court for the Western District of Louisiana. Prior to trial, Henderson settled with its attorneys, with Lanaux, and with Del-Ray. A bench

trial proceeded on the issues raised between Henderson, Krutzer, and Latour.

The district court found that the Broussard well failed to produce in paying quantities after February 22 and that Krutzer and Del-Ray did not commence reworking operations after they acquired the property on February 24. The court noted that reworking operations usually required "down hole" activity below the surface of the ground. The court found that under the sixty-day cessation of production provision the lease expired on April 22, a date prior to Krutzer's transfer to Henderson on May 5. The judge held that the transfer to Henderson was a sale or an assignment rather than a sublease, and that articles of the Louisiana Civil Code rather than the provisions concerning lessors in the Louisiana Mineral Code controlled the warranty of title question.

La.Civ.Code Ann. art. 2505 provides for the restitution of the purchase price to the buyer in the case of eviction, even where the purchase agreement specifies no warranty, unless the buyer was aware of the danger of eviction at the time of purchase. The court held that this provision requires actual knowledge of danger of eviction, and found that Henderson did not have such knowledge. The district court further ruled that under La.Civ.Code Ann. art. 2646, the transfer agreement contained an implied warranty of the existence of the mineral lease which was different in kind from any warranty that the title was free from legal defects. The court awarded Henderson $204,500 plus interest against Krutzer, and $20,000 plus interest against Latour. Krutzer's claim against Henderson was dismissed.

On appeal, Krutzer argues: (1) the district court erred in holding that the lease expired before the transfer to Henderson because Krutzer did not commence reworking operations within sixty days after cessation of production in paying quantities; (2) the parties were free to contract and intended to and did contract that the transfer to Henderson was a sublease which was made without warranty of title; (3) the

district court's ruling that Krutzer and Latour actually or impliedly warranted title to Henderson was erroneous; (4) the district court erred in reimbursing Henderson for the entire sale price. Latour argues that he expressly and properly excluded any warranty of title when he transferred to Henderson, and that the district court erred in ordering him to reimburse the purchase price paid by Henderson.

## II

Krutzer and Latour first argue that their lease interests did not expire before the transfer to Henderson because Krutzer commenced reworking operations within sixty days after the Broussard well ceased to produce in paying quantities. The Louisiana Supreme Court recently ruled on the issue of what activities constitute reworking operations under a cessation of operations clause. In *Jardell v. Hillin Oil Co.*, 485 So.2d 919 (La.1986), that court relied on former jurisprudence to articulate some general guidelines "for distinguishing reworking operations from routine maintenance." *Id.* at 924.

> For reworking to occur, it is necessary first that production has ceased or slowed down or has never been achieved. Reworking need not involve additional drilling. It is also clear that reworking operations encompass essential preparatory steps. Furthermore production need not be resumed during the delay. There is also the suggestion that the operations conducted by the lessee must be a good faith effort to resume production as soon as possible.

*Id.* (footnote omitted). The court also suggested that a reworking "activity should be physically associated with the well site and intimately connected with the resolution of the difficulty that caused the well to cease production." *Id.* at 924–25 (citing *Lone Star Producing Co. v. Walker*, 257 So.2d 496, 500 (Miss.1971)). Finally, the court noted that "whatever the activity, it must be done 'as an ordinarily competent operator would do in the same or similar circumstances'." *Id.* at 925 (quoting *Rogers v.*

*Osborn,* 152 Tex. 540, 261 S.W.2d 311, 314 (1953)).

Applying these guidelines, the court held that repairs to the disposal line, repairs to the pump jack, and pressure pump testing for downhole problems constituted a good faith effort to restore production and the reworking operations necessary to preserve the lease. *Id.* at 925–26.

■ The district court in the case at bar expressed two reasons for his holding that Krutzer's compressor repairs did not constitute reworking operations. He stated that rework usually takes place down hole or below the surface, and that no additional actual drilling took place. This holding is contrary to the *Jardell* opinion. The *Jardell* court expressly held that reworking need not involve additional drilling, and it does not suggest that reworking must take place below the ground. We therefore remand with instructions to the district court to vacate its ruling which was based on the finding that Krutzer did not commence reworking operations within the sixty-day period after production ceased, and to determine this issue in accordance with the *Jardell* guidelines.

### III

Krutzer also argues that the district court erred in holding that his transfer to Henderson was an assignment or a sale rather than a sublease. He also refutes the court's conclusion that he was obligated to reimburse the purchase price to Henderson under La.Civ.Code Ann. art. 2505 (giving a buyer a remedy for eviction even where there is a stipulation of no warranty) and under La.Civ.Code Ann. art. 2646 (providing for an implied warranty of existence in sales of incorporeal rights). *See* La.Rev. Stat.Ann. § 31:18 ("A mineral right is an incorporeal immovable.").

Under Louisiana law, the reservation of an overriding royalty by a lessee in the course of transferring a lease interest makes that transfer a sublease rather than an assignment. *Broussard v. Hassie Hunt Trust,* 231 La. 474, 91 So.2d 762, 764–65 (1956) (the reservation of "some control or

interest," even an overriding royalty, is sufficient) (citing cases); *Brown v. Mayfield,* 488 So.2d 322, 324 (La.Ct.App.1986) ("where the lessee retains some interest in the lease the contract is one of sublease") (citing cases); *Robinson v. North American Royalties, Inc.,* 463 So.2d 1384, 1386 (La.Ct.App.) (reservation of overriding royalty) (citing cases), *amended on other grounds,* 470 So.2d 112 (La.1985); *see also* La.Rev.Stat.Ann. § 31:127 ("The lessee's interest in a mineral lease may be assigned or subleased in whole or in part."); La.Rev. Stat.Ann. § 31:127 comment ("Article 127 leaves undisturbed the developed jurisprudence concerning the distinction between an assignment and a sublease in Louisiana.").

The provisions in the Louisiana Mineral Code that control the rights and obligations of lessors and lessees of mineral rights also control the rights and obligations of sublessors and sublessees of mineral rights. *See* McCollam, *A Primer for the Practice of Mineral Law,* 50 TUL.L.REV. 732, 829 (1976) ("Moreover, the same obligations, including the implied obligations which govern the relationship of lessor and lessee, are present between the sublessor and sublessee, unless specifically negated by contract.") (citing La.Rev.Stat.Ann. § 31:127 & comment); Corley, *Mineral Lease—Assignment—Liability of Original Lessee,* 43 TUL.L.REV. 894, 896 (1969) ("In the case of a sublease, there are in fact two separate leases, each giving rise to a separate lessor-lessee relationship.").

Mineral leases are generally construed as ordinary leases under Louisiana law. *Williams v. Humble Oil & Refining Co.,* 432 F.2d 165, 177 (5th Cir.1970), *cert. denied,* 402 U.S. 934, 91 S.Ct. 1526, 28 L.Ed.2d 868 (1971); *St. Romain v. Midas Exploration, Inc.,* 430 So.2d 1354 (La.Ct.App.1983). Where provisions of the Mineral Code conflict with the Civil Code, however, the Mineral Code determines the effect of a Louisiana mineral lease. La.Rev.Stat.Ann. § 31:2. In contrast to articles 2505 and 2646 of the Civil Code, article 120 of the Mineral Code provides that a mineral lessor

may exclude warranty of title. *See* La. Rev.Stat.Ann. § 31:120 ("A mineral lessor impliedly warrants title to the interest leased unless such warranty is expressly excluded or limited."); *see also Texas General Petroleum Corp. v. Brown,* 408 So.2d 288, 289 (La.Ct.App.1981) ("Unless the warranty is *expressly excluded,* a mineral lessor warrants title to the interest he leases, and the lessee may recover the bonus paid for a lease if the warranty of title is breached. LRS 31:120.") (emphasis in original); McCollam, *supra,* at 799 ("Even this limited warranty [entitling the lessee to recover money paid in the event of title failure] ... can be excluded from the lease by a specific clause....").

■ The transfer agreement between Krutzer and Henderson provided in pertinent part:

> It is specifically understood and agreed between Assignors and Assignee that ... Assignors do hereby expressly reserve unto themselves, ... an undivided 50% of ⅛ of ⅝ Carried Working Interest in each of the Leases until Payout as more fully defined in the Agreement and reproduced hereafter together with the additional rights provided for in the Agreement.

This interest that Krutzer reserved when he transferred to Henderson amounted to an overriding royalty. Reservation of that royalty made the transfer a sublease, despite the language of assignment employed in the transfer documents. *See Brown,* 488 So.2d at 324; *Robinson,* 463 So.2d at 1386. The transfer is thus subject to article 120 of the Mineral Code, which allows mineral lessors to exclude warranty of title, rather than the conflicting articles of the Civil Code on which the district court relied.

The district court ruled that Krutzer was responsible under the Civil Code for reimbursing Henderson's purchase price, whether the letter agreement that warranted title or the transfer agreement that did not was the controlling document that expressed the intent of the parties. The court did not make a factual finding as to whether the parties intended to warrant title. The parties assert conflicting positions as to whether they intended to warrant title. Because we find as a matter of law that the transfer was a sublease in which the Mineral Code would allow an exclusion of warranty of title, the factual question of whether the parties intended to and did warrant title could be a dispositive issue. Should the district court determine on remand that Krutzer did not commence reworking operations as required by the terms of the lease and that the lease expired before Krutzer's transfer to Henderson, the court is directed to determine this controlling issue of fact.

## IV

■ Latour's two percent interest in the Broussard lease was also subject to the sixty-day cessation of operations clause. Latour transferred to Henderson on June 10. If the district court determines on remand that no production in paying quantities or reworking operations took place for sixty days after February 22, Latour's interest expired before his transfer to Henderson. Because the district court may make such a determination, we now address the warranty of title issue with respect to that transfer.

The transfer document that Latour and Henderson executed provided that "[t]his assignment is made without warranty either express or implied." These parties executed no other contrary documents. Latour thus asserts that their intent not to warrant title is clear and that the judgment against him must be reversed.

Unlike Krutzer, however, Latour transferred "all ... rights, title and interest in and to the ... mineral leases" without reserving any interest whatsoever. The Latour transfer was thus an assignment rather than a sublease. *See Brown,* 488 So.2d at 324; *Robinson,* 463 So.2d at 1386. The assignment of a lease is subject to the warranty provisions in the Civil Code. *See Berwick Mud Co. v. Stansbury,* 205 So.2d 147, 149 (La.Ct.App.1967) ("the assignment of a lease is a sale of a real right") (citing

cases and La.Rev.Stat.Ann. § 9:1105, now similarly codified as to the nature of a mineral right at La.Rev.Stat.Ann. § 31:18); *Carter Oil Co. v. King,* 134 So.2d 89, 90 (La.Ct.App.1961) ("the sale of a mineral lease is subject to the laws of warranty") (citing cases and Civil Code articles); *see also Williams,* 432 F.2d at 177 ("codal provisions applicable to ordinary leases must be applied to mineral leases whenever they are pertinent") (citing cases).

La.Civ.Code Ann. art. 2505 provides as follows:

> Art. 2505.   Even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of the eviction, and purchased at his peril and risk.

A failure of title is sufficient to obligate the seller to reimburse the buyer's purchase price under this provision.  See *Carter Oil Co,* 134 So.2d at 90 ("the sale of a mineral lease is subject to the laws of warranty and upon failure of title a purchaser is entitled to a return of the price") (citing cases and Civil Code articles, including article 2505); *Hausler v. Nuccio,* 214 La. 1069, 39 So.2d 734, 738 (1949) (actual eviction not necessary to bring suit for recision of sale where outstanding title to land that defendant sold plaintiff exists and plaintiff was not aware of the danger of eviction at the time of sale) (citing cases and Civil Code articles, including article 2505).  If Latour's title to the lease failed before he attempted to transfer his interest to Henderson, and Henderson did not have knowledge of the title failure at the time of transfer, Latour is obligated to reimburse the purchase price to Henderson despite the express attempt to preclude any such warranty.  *Cf. Sabine Production Co. v. Guaranty Bank & Trust Co.,* 432 So.2d 1047, 1052–53 (La.Ct.App.) (resale deed that "does grant, sell and convey ... such title

only as the Association acquired ... without warranty of any kind whatsoever" was not a quitclaim deed, did not specifically exclude any implication that the seller had title, and did not negate the seller's intention to have conveyed the property to the buyer), *writ denied,* 438 So.2d 570 (La. 1983).[1]

Only actual knowledge of the danger of eviction on the part of the buyer can excuse the seller's obligation to reimburse the purchase price under article 2505.  *Bielawski v. Landry,* 397 So.2d 861, 864 (La.Ct. App.), *writ denied,* 400 So.2d 904 (La.1981); *Collins v. Slocum,* 317 So.2d 672, 681 (La. Ct.App.) (citing cases), *writ denied,* 321 So.2d 362 (La.1975).  The district court held that Henderson did not have actual knowledge of the danger of eviction at the time of the Krutzer transfer on May 5.  The judge did not, however, make a factual finding as to Henderson's knowledge that the lease had expired at the time of the Latour transfer which occurred more than one month later than the Krutzer transfer. Should the district judge rule against Krutzer and Latour on the reworking question, he must address this factual question in resolving the warranty of title issue with respect to the Latour transfer.

The district court also relied on La.Civ. Code Ann. art. 2646 in ruling against Krutzer and Latour.  Article 2646 provides that the seller of "an incorporeal right, warrants its existence at the time of the transfer though no warranty be mentioned in the deed."  The literal terms of this article do not apply to the Latour transfer since it does not cover a deed which expressly provides that it is made without warranty. The correct translation of the original French text, however, is though "it be made without warranty" rather than though "no warranty be mentioned in deed."  La.Civ.Code Ann. art. 2646 note. Furthermore, Henderson cites two Louisi-

---

1. *Laville v. Rightor,* 17 La. 303 (1844), is not to the contrary.  In that case, the court found no representation of title on the part of a seller of land because the contract of sale did not sufficiently describe the land sold.  *Id.* at 309.  Neither does *Callon Royalty Fund–1980 v. Walker,* 461 So.2d 621 (La.Ct.App.1984), require a contrary result.  In that case, the court held the buyer waived the eviction remedy of article 2505 because the royalty deed expressly excluded warranty "even as to return of purchase price." *Id.* at 624.

ana cases where the court indicated that an assignment made expressly "without recourse" contained an implied warranty of the existence of the thing transferred. *See Templeman v. Hamilton & Co.,* 37 La. Ann. 754 (1885) (assignment of notes and mortgage); *Corcoran v. Riddell,* 7 La.Ann. 268 (1852) (assignment of a judgment). In both of these cases, however, the court discussed the warranty of existence in conjunction with the warranty against eviction. *See Templeman,* 37 La.Ann. at 759–60; *Corcoran,* 7 La.Ann. at 269. Whether article 2646 provides a basis for recovery for an assignee such as Henderson that is independent of the eviction remedy in article 2505 is not clear. Should the district court determine on remand that Latour's interest lapsed before the transfer to Henderson, but that Henderson had actual knowledge of the danger of eviction at the time of the transfer, the court must determine this question of Louisiana law in the first instance. We neither express nor intimate any view thereon in this opinion.

## V

■ Finally, Krutzer argues that the measure of damages the district court awarded Henderson was erroneous. The court granted Henderson the entire purchase price paid to Krutzer except for a $47,500 credit for the price of equipment that Henderson sold to Lanaux. In the event that on remand the district court finds Krutzer's rights expired before the transfer to Henderson because of Krutzer's failure to commence reworking operations, and that Krutzer warranted title to Henderson upon transfer, the court must consider this issue.

Krutzer asserts that any eviction or breach of warranty that Henderson suffered pertained only to the Broussard lease. The Landry leases contained standard ninety-day cessation of production clauses. Krutzer's interest in those leases was still extant when he transferred to

Henderson.[2] Krutzer suggests that Henderson then had a duty to preserve the Landry leases in any way contemplated by the terms of the leases—drilling, shut-in payments, or even commencing reworking operations on the Broussard well. Krutzer asserts that Henderson's award should be reduced by the amount of the purchase price proportionate to the Landry leases and by the amount of profits Krutzer lost because of Henderson's failure to maintain the Landry leases, in addition to the equipment credit.

Henderson counters that the three tracts were unitized so that eviction from or breach of the warranty of title to the Broussard tract, the only valuable property in the unit, entitled it to reimbursement of the entire purchase price. Henderson argues that it had no right to rework the Broussard well after expiration of that lease, that drilling on the Landry leases was economically impractical, and that the payment of shut-in rentals was not a proper means of perpetuating the Landry leases.

Krutzer relies on an article in the Civil Code which provides that where a buyer is evicted from "a part of the thing" purchased, the buyer may recover only the corresponding portion of his purchase price. La.Civ.Code Ann. art. 2514. The overriding Mineral Code provides, however, that "[a] single lease may be created on two or more noncontiguous tracts of land, and operations on the land burdened by the lease or land unitized therewith sufficient to maintain the lease according to its terms will continue it in force as to the entirety of the land burdened." La.Rev.Stat.Ann. § 31:114; *see also Rougon v. Chevron, U.S.A., Inc.,* 575 F.Supp. 95, 98–99 (M.D. La.1983) (production from anywhere in unit during primary term of lease maintains all leases in unit beyond primary term) (citing *Hunter Co. v. Shell Oil Co.,* 211 La. 893, 31 So.2d 10 (1947), and quoting section 31:114); La.Rev.Stat.Ann § 31:114 com-

---

**2.** Absent reworking operations, the interests of Krutzer and Latour in the Landry leases expired on May 22. Krutzer transferred to Henderson

on May 5. Latour cannot assert this argument since he did not transfer to Henderson until June 10.

ment ("Article 114 preserves established law based on the concept that the mineral lease is indivisible."). The parties to a lease of unitized tracts may, however, provide that production maintains only the producing portion of the unit. La.Rev. Stat.Ann § 31:114 comment; *Rougon*, 575 F.Supp. at 99; *see also Roseberry v. Louisiana Land & Exploration Co.*, 470 So.2d 178, 182–83 (La.Ct.App.1985) (clause stating that mineral lease continues beyond primary term only as to acreage for which production royalties were payable divided unit upon unitization so that at expiration of primary lease term lease continued only as to those acres and expired as to the rest).

The Landry tracts and the Broussard tract were unitized in 1976 by an agreement that named the three separate leases and described the three separate tracts. This agreement provided as follows:

> The parties do hereby combine and pool the oil, gas and mineral leases hereinbefore described so that the lands covered by said leases which fall within the above described unit, ... are pooled and unitized for the production of gas from the Louisiana Crude Oil & Gas Company, Inc.—L.G. Broussard No. 1 Well.

Under this unitization agreement, production in paying quantities from the Broussard well would clearly preserve the two Landry leases as well as the Broussard lease. Krutzer transferred his interest in the three leases to Henderson as a unit consisting of the Broussard lease with its sixty-day cessation clause, and the Landry leases with their ninety-day cessation clauses.

The district court awarded Henderson reimbursement of the entire purchase price, less the equipment credit. The court made no finding as to Henderson's activities or duty with regard to the Landry leases during the thirty days after the expiration of the Broussard lease. Conceivably, had reworking operations on the Broussard well been commenced during that thirty days by Lanaux, Henderson or Krutzer, Henderson's interest in the Landry leases would have been preserved despite the lapse of Krutzer's interest in the Broussard lease.

The effect of the differing maintenance of production clauses in the individual leases in conjunction with the terms of the unitization agreement in this confusing factual situation is a question of legal uncertainty under Louisiana law. Should the district court rule against Krutzer on the reworking and warranty of title issues, the district court is the proper forum to initially address this question and to make the factual and legal findings needed to determine the proper amount of damages due Henderson.

The judgment appealed from is vacated and the cause is remanded with directions to redetermine the reworking issue and such other issues as may follow that determination consistent with this opinion.

**VACATED AND REMANDED** with directions.