Dear Mr. Grubb:
You have requested an opinion from this office regarding whether Caddo Parish ("The Parish") has an obligation to return funds received as a bonus on a mineral lease when the Parish was ultimately determined not to possess title to the subject property. You have also asked if such a return of a bonus would constitute a violation of La.Const. Art. VII, § 14. We will review the specific facts and the applicable law below. However, it is our opinion that the Parish does not have an obligation to return the bonus and that such a return would constitute a violation of La.Const. Art. VII, § 14.
The facts giving rise to your request stem from State Lease No. 18880, a mineral lease between the Caddo Parish Commission ("lessor" or "Parish") and Sulphur River Exploration, Inc. ("lessee" or "Sulphur"). The property contained in State Lease No. 18880 was placed up for bid at the January 2006 meeting of the State Mineral Board, at the request ofSanders Resources, Inc., the lessee's broker. The lessor's resolution to place the property up for bid noted that the lessor "may" own the minerals. In the notices for bid and in the lease itself, it was stated that the property was put up for bid "without warranty of any kind" and that, should the title ultimately fail, lessor was not obligated to return "any consideration . . . including, but not limited to, bonuses . . ." Ultimately, it was discovered, following bidding and the payment of the bonus, that the lessor did not own the minerals.
According to the Comments to La.R.S. 31:120, it is standard industry practice for title research to be conducted by potential lessees prior to bidding. This article squarely places the onus of determining validity of title with the lessee, in this case Sulphur. Louisiana Revised Statutes31:120 clearly states that, "[a] mineral lessor impliedly warrants title to the interest leased unless such warranty is *Page 2 expressly excluded or limited." [Emphasis added]. It is the opinion of this Office that the language noted above from the bid notices and the lease that the lease was granted "without warranty of any kind" is an express exclusion of a warranty under La.R.S. 31:120. Accordingly, it is our opinion that the Parish is not subject to the refund provisions of La.R.S. 31:120. Such an interpretation is supported by Texas GeneralPetroleum Corp. v. C.A. Brown et al., 408 So.2d 288, 289 (La.App. 2 Cir. 1981), in which the majority stated that "[u]nless the warranty is expressly excluded, a mineral lessor warrants title to the interest he leases. . ." In the instant matter, it is clear that the warranty was, indeed, excluded.
In communications to this Office, counsel for lessee argues that the Civil Code articles on error should apply in this matter. La.C.C. Arts.1948—1952. We disagree. It is clearly stated in the Mineral Code, La.R.S. 31:2, that,
 [i]n the event of conflict between the provisions of [the Mineral] Code and those of the Civil Code or other laws the provisions of the Mineral Code shall prevail. If [the Mineral] Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable.
Thus, we are of the opinion that La.R.S. 31:120 trumps La.C.C. Arts.1948—1952 in this matter. Although the general obligations rules in the Civil Code would typically allow for the error of the lessor to vitiate the consent of the lessee, the Mineral Code provision that provides for an exclusion of warranty, as is contained in the lease at issue here, supersedes the Civil Code provisions. Additionally, because the Parish leased the subject tracts specifically without warranty, we do not believe that any error existed.
We are supported in this opinion by the Comments to La.R.S. 31:120
regarding who has the burden of conducting title research in mineral transactions. Because this burden rested with either Sanders or Sulphur as agent for lessee and lessee, respectively, their collective failure to identify the title problem at hand leaves them with the burden of paying the price for their oversight. Although this may seem to be a harsh outcome, we are comforted by the Comments to La.R.S. 31:120, which state that,
 the wise operating practice in the industry, which includes thorough title searches, suggests the conclusion that the operator is making his own decision on commitment of funds and is assuming the risk of whatever title defects may exist. [Emphasis added].
There was no detrimental reliance here, as there was no warranty and lessee or its agent should have identified the title error in advance of paying the bonus. It is also relevant to note that Sanders, the agent for the lessee, was the nominating party in the bid process, making its oversight doubly surprising. *Page 3 
Even if we were to accept, arguendo, that the Civil Code articles on warranty should apply to the current situation, it is our opinion that the outcome would be no different. We are guided to this conclusion byDel-Ray Oil Gas, Inc. v. Henderson Petroleum Corp., et al.,797 F.2d 1313 (C.A. 5 1986). The majority in Del-Ray stated that "[o]nly actual knowledge of the danger of eviction on the part of the buyer can excuse the seller's obligation to reimburse the purchase price. . ." Id.
at 1318. Because it was clearly stated in several instruments of which Sulphur was aware,[1] prior to the payment of the bonus, that the Parish may not own the subject minerals, it is our opinion that, should the Civil Code apply to this matter, which we do not believe is the situation, Sulphur had the requisite "actual knowledge" noted in Del-Ray
prior to paying the bonus and thus is not entitled to a refund under the Civil Code theory.
It is our opinion that what the lessor granted in this matter is akin to a quitclaim deed to its interest in the minerals. This is evidenced by the exclusion of warranty. As such, the lessor transmitted to lessee, with full disclosure (i.e., exclusion of warranty in the lease and public documents noting that the Parish may own the minerals), only that interest that lessor had in the property. In this case, that interest turned out to be nothing. Such is always a possible outcome of quitclaiming. If the holder of a quitclaim deed is later found not to have acquired any interest in the thing quitclaimed, it does not have recourse for the price paid for that deed against the seller. We believe that precisely the same consequences follow in this situation.
Because leases can contain limitations or exclusions of warranty (and often do, especially in the lease forms of large landowners), the principle of caveat emptor especially applies to potential oil and gas lessees. The lessees in oil and gas transactions are savvy business people whose job it is to protect against risk when purchasing a lease. Failure to do so, particularly when on notice that there is no warranty, and that a defect in title may exist, guides our reasoning in this matter. Ultimately, it is our opinion that no error was involved here. The Mineral Code controls this matter and the Parish need not return — and, indeed, cannot return — the bonus paid for State Lease No. 18880.
Because the Parish is under no legal obligation to return the bonus, it is further our opinion that any return of the bonus monies would constitute a violation of La.Const. Art. VII, § 14. It has long been the opinion of this Office that this constitutional provision is violated if a political subdivision of the State donated assets without a legal obligation to do so. See e.g., La. Atty. Gen. Op. No. 05-0037 (citingCity of Port Allen v. Louisiana Municipal Risk Agency, 439 So.2d 399
(La. 1983)). The case that that opinion and many others of this Office was based on, City of Port Allen, supra, has now been overruled by the Louisiana Supreme *Page 4 
Court. See, Board of Directors of the Industrial Development Board ofthe City of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, 938 So.2d 11, 23, 2005-2298 (La. 9/6/06) (stating that "[t]he statement in City of Port Allen that § 14(A) is violated `whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so' presents an unworkable and incorrect interpretation of La.Const. art. VII, § (A) [sic]. Consequently, we repudiate that interpretation of § 14(A). We find instead that § 14(A) is violated when public funds or property are gratuitously alienated.").
Despite the overruling of City of Port Allen, which would have required an obligation to exist for the Parish to refund the bonus in this matter, we still find that, under Board of Directors, La.Const. Art. VII, § 14 would be violated by such a refund. This is because such a refund would constitute a "gratuitous alienation" by the Parish, an action not permitted even under Board of Directors.
We hope this sufficiently answers your inquiry; however if we may be of further assistance please do not hesitate to contact our office.
 Yours very truly,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY:__________________________
 RYAN M. SEIDEMANN
 Assistant Attorney General
 CCF, Jr./RMS/tp
[1] See e.g., listing description of Tract 38069, which clearly states that "[a]ny mineral lease selected from this Tract and awarded by the Louisiana State Mineral Board shall be without warranty of any kind. . ."
OPINION NUMBER 05-0037
Mr. Timothy Mathison.
90-A-2 PUBLIC FUNDS
La.Const. Article 7, Section 14
City of Slidell is prohibited under Article 7, Section 14 of the Louisiana Constitution from using City funds to pay contractors for the elevation of private property.
Mr. Timothy Mathison City Attorney City of Slidell P.O. Box 828 Slidell, Louisiana 70459
Dear Mr. Mathison:
You requested an Attorney General's opinion regarding the FEMA flood hazard mitigation program ("Program"). You indicated that the City of Slidell has participated in the Program for the last several years. The City administers federal grant funds as a subgrantee of the State of Louisiana, the grantee. The program provides for the elevation of repetitively flooded residences located within the City. The homeowner contracts with a general contractor for performance of the work. The contractor submits requests for payments to the City's third-party administrator upon completion of project milestones according to the contract. The City, on an ongoing basis, would submit requests to the State for advance of funds based upon future cash flow needs. The federal funds advanced by the State were used to pay the contractors. No City funds were expended in this process.
You advise that FEMA recently issued regulations providing for a different process for administering the Program. FEMA now requires that City funds be used to fund the payments to contractors. The City must then seek reimbursement of the funds expended. Upon approval, the City would be reimbursed by the State on a periodic basis, either quarterly or monthly. Essentially, instead of receiving federal funds from the State in advance of payments, and then using those funds to pay the requests for payments, FEMA now requires that the City use its own funds to pay the requests for payments, and then seek reimbursement from the State. You question whether the new FEMA payment process violates Article VII, Section 14 of the Louisiana Constitution or any other provision of law.
As you are no doubt aware, Article 7, Section 14 of the Louisiana Constitution prohibits the state or any of its political subdivisions from loaning, pledging or donating public funds or anything of value to or for any person, association or corporation, public or private. The Supreme Court has interpreted Art. VII, Sec. 14 to be violated whenever the state or a political subdivision seeks to give up something of value when it is under *Page 2 
no legal obligation to do so. City of Port Allen v. Louisiana MunicipalRisk Agency, 439 So.2d 399 (La. 1983). We have interpreted legal obligation to mean that the expenditure of funds be sanctioned, authorized by law, or in the discharge of a legal duty. Attorney General Opinion Nos. 03-0444, 02-0162 and 00-14.
There can be no question but that the City of Slidell has no general obligation or authority to individual property owners or citizens to expend public funds to improve or elevate their private property. Therefore, it is the opinion of this office that the City of Slidell is prohibited under Article 7, Section 14 of the Louisiana Constitution from using City funds to pay contractors for the elevation of private property. The fact that the City may later seek to have those funds reimbursed is irrelevant.
Note that the payments made under the original process, where the City received FEMA grant funds and then used those funds to pay contractors, were not made in violation of Article 7, Section 14 of the Louisiana Constitution. The funds received as part of the Program are not funds of Louisiana, but rather are funds of the United States Government. Accordingly, Article 7, Section 14 does not apply. In accord is Attorney General Opinion No. 02-0414.
Trusting this adequately responds to your request, we remain
 Yours very truly,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY:__________________________
 KENNETH L. ROCHE, III
 Assistant Attorney General
 CCF, JR/KLR, III/jv