460 So.2d 739 (1984)
Rose Marie DUGAS, Plaintiff-Appellant,
v.
Ernest MOUTON, et al., Defendants-Appellees.
No. 83-1144.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1984.
*740 Cormier & Curtis, Ernest J. Cormier, Lafayette, for plaintiff-appellant.
Edward J. Marquet, and John K. Hill, Jr., Lafayette, for defendants-appellees.
Before FORET, CUTRER, JJ., and CULPEPPER, J. Pro Tem.
CULPEPPER, Judge Pro Tem.
Plaintiff, Rose Marie Dugas, appeals from the dismissal of her suit for personal injury against Ernest Mouton, his liability insurer, Maryland Casualty Company, Inc., and Ronald Coleman. The trial court dismissed plaintiff's suit, finding that she failed to prove that she had sustained any injury in the accident out of which this action arose. We affirm.
Defendant Mouton and his liability insurer filed a third party demand against the State of Louisiana, Department of Transportation and Development (DOTD) asking for contribution in the event that they be found liable to Ms. Dugas. The judgment rendered in this matter was silent as to Ms. Dugas's claim against defendant Coleman and the third party demand; therefore, these demands are considered rejected. Guaranty Bank & Trust Company of Alexandria, Louisiana v. Carter, 394 So.2d 701 (La.App. 3d Cir. 1981), writ denied, 399 So.2d 599 (La.1981). There has been no appeal from those claims, and that portion of the judgment is now considered final.
Rockwood Insurance Company, the worker's compensation insurer for plaintiff's employer, intervened in this matter asserting its right of subrogation against Mr. Mouton and seeking reimbursement for $4,400 in benefits and $6,005.87 in medical payments paid to Ms. Dugas. Rockwood also filed a separate suit against Mr. Mouton seeking the same relief. Although that matter was consolidated with Ms. Dugas's action at trial and on appeal, there was no appeal by Rockwood and judgment against it is now final. A separate opinion will be rendered this date in that companion case. Rockwood Insurance Company v. Mouton, 460 So.2d 742 (La.App. 3d Cir.1984).
The accident which is the subject of this litigation occurred on May 9, 1980, shortly after 3:30 p.m. Ms. Dugas was a passenger in a dump truck driven by Ronald Coleman and owned by DOTD, the employer of Ms. Dugas and Mr. Coleman. The DOTD truck was traveling west on Second Street in Crowley, Louisiana, toward its intersection with Avenue G and was pulling a large roller used in repairing highways. Ernest Mouton was traveling south on Avenue G and stopped for the red traffic light at the intersection. Mr. Mouton testified that he saw the left signal indicator blinking on the DOTD truck, so he attempted to make a right turn on red from Avenue G onto Second Street. Mr. Coleman, who was traveling with the favored light, swerved left and applied his brakes in an attempt to avoid a collision with Mr. Mouton. The truck and Mr. Mouton's car did not collide; however, the roller swung around and struck the left front of the car. Mr. Mouton and Mr. Coleman both testified that the impact was slight. Mr. Coleman testified that the impact would not have overturned a soft drink bottle on the truck seat. Officer McBride, the policeman who investigated the accident, stated that no one indicated they had been hurt.
Ms. Dugas testified that when she returned to her work unit on Friday afternoon after the accident, she told a coemployee *741 and her acting supervisor that she was injured. She did not complete an employee's report of injury until May 12, the Monday following the accident. Ms. Dugas claims to have suffered lower back pain from shortly after the accident up until the time of trial.
Ms. Dugas was first examined and treated by Dr. Joseph A. George, her family practitioner, on May 12, 1980. Dr. George noted some back spasm and his diagnosis was that Ms. Dugas had suffered a lumbosacral strain. He prescribed muscle relaxers and pain killers. Dr. George noted, "... she was so big that it was really very difficult for me to examine her." Ms. Dugas is five feet three inches tall and has weighed approximately 190 pounds since shortly after the accident. He saw her again on May 13, and decided to hospitalize her on May 14 because she was complaining of weakness in her legs and severe pain. Ms. Dugas remained in the hospital until June 2, during which time she received physiotherapy, traction, muscle relaxants, analgesics, and steriods. She was discharged with a secondary diagnosis of pelvic inflammatory disease.
Dr. George testified that Ms. Dugas never seemed to get well, and he reached a point that he could no longer tell if her problem was back spasm or simply obesity. Dr. George saw her approximately fifty times between May 12, 1980 and May 1, 1981, when he released her to return to work. During this time Dr. George indicated that Ms. Dugas should have improved at least a little; however, it seemed that she did not. Dr. George admitted that in cases such as this where obesity is a factor, the diagnosis is made up of the patient's complaints.
Ms. Dugas was examined on referral from Dr. George by Dr. James C. McDaniel, an orthopedic surgeon, on July 9, 1980. His examination revealed no objective findings, and he indicated that if she had had a sprain, it was healed at the time of his examination. Dr. McDaniel also indicated that Ms. Dugas's lower back problems could be related to her obesity or pelvic inflammatory disease.
On April 21, 1981, Ms. Dugas was examined by Dr. Fred C. Webre, an orthopedic surgeon, at the request of the State Adjusters. Dr. Webre's examination revealed no objective signs of any medical problem, and he agreed that her complaints could be related to her obesity.
Dr. George also referred Ms. Dugas to Dr. Louis E. Blanda, an orthopedic surgeon, who first examined her on May 18, 1981. At that time Dr. Blanda noted tenderness in the lower lumbar area and a mild degree of spasm. He recommended that Ms. Dugas undergo nerve conduction and electromyographic studies in order to determine whether she suffered from nerve root compression. He based this recommendation on her subjective complaints, but made no objective findings. Dr. Blanda saw her again on June 8, at which time she had not yet had the recommended testing done. He advised her to continue conservative treatment, including exercise and heat. The nerve conduction and electromyographic studies were conducted by Dr. Norman E. Anseman, a specialist in physical medicine and rehabilitation, on October 5 and October 13, 1981. The results were within normal limits.
Dr. Blanda saw Ms. Dugas twice more, on October 14, 1981, and February 3, 1982. He testified that her subjective symptoms were consistent with a disc injury; however, he could find no objective signs of such an injury. He suggested that a CAT scan and a myelogram be performed. Dr. Blanda also testified that Ms. Dugas's complaints of lower back pain were consistent with that caused by pelvic inflammatory disease.
Evidence at trial established that Ms. Dugas had been involved in a second accident on June 26, 1980, in which she was struck from the rear by another vehicle. None of the doctors whose testimony was offered into evidence in this case were advised that Ms. Dugas had been involved in another accident. She testified at trial of this matter that she had not been injured in *742 that accident; however, defendants offered into evidence a petition for damages in the amount of $45,000 for injuries arising out of the June 26 accident.
Although the trial judge found that the sole and proximate cause of the May 9 accident was the negligence of Mr. Mouton, he found that Ms. Dugas failed to prove that she sustained any injury in that accident. In reaching this decision the trial judge considered the characterization of the impact by Mr. Coleman and Mr. Mouton, the failure of the doctors to find any objective signs of injury and their indications that her complaints could be due to her obesity or pelvic inflammatory disease. The trial judge also considered Ms. Dugas's failure to report to any of the physicians the occurrence of the second accident, and that despite her denial that she suffered any injuries in that accident, she has filed suit seeking damages for personal injury.
It is well settled that the trial court's factual conclusions, particularly where the credibility of a witness is involved, are entitled to great weight and will not be disturbed on appeal unless clearly wrong. Bruins v. United States Fleet Leasing, Inc., 430 So.2d 386 (La.App. 3d Cir.1983). After reviewing all of the evidence and testimony in this case, we can not conclude that the trial court clearly erred in its determination that Ms. Dugas was not injured as a result of the accident on May 9, 1980.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.