542 So.2d 846 (1989)
Mary Alice CHARLES Plaintiff-Appellant,
v.
ARCENEAUX FORD, INC., et al., Defendants-Appellees.
No. 88-68.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*847 Harold Savoie, Lafayette, for plaintiff-appellant.
Gachassin, Hunter & Sigur, Nicholas Gachassin, Lafayette, for defendants-appellees.
Before GUIDRY, STOKER and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether or not the trial court's damage award was adequate and whether the fee awarded to one of the medical expert witnesses should be increased.
Mary Alice Charles (hereinafter plaintiff) filed suit, seeking damages for personal injuries allegedly received in an automobile accident on July 28, 1986, against defendants Alden Broussard (hereinafter Broussard), the driver of the other vehicle, Broussard's employer, Arceneaux Ford, Inc. (hereinafter Arceneaux), and its liability insurer, St. Paul Fire & Marine Insurance Company (hereinafter St. Paul).
After trial on the merits, the trial court awarded plaintiff $500.00 in general damages and assessed all costs to defendants. Plaintiff devolutively appeals complaining of an inadequate award of damages and of the amount of an expert witness fee. We affirm.

FACTS
The facts upon which this suit is based are undisputed. Around noon on July 28, 1986, Broussard, an employee of Arceneaux who had the permission of Arceneaux, was driving a Ford Pickup Truck owned by Arceneaux. Broussard was traveling North on Washington Street in St. Martinville, Louisiana. When he arrived at the intersection of Washington and Port Streets, he failed to honor a stop sign and ran into the left side of plaintiff's vehicle which was heading West on Port Street. Plaintiff was driving on the favored street and did not have a stop sign.
Several witnesses, who arrived at the scene shortly after the accident, testified that they spoke to the plaintiff who indicated that her head was injured. Plaintiff was taken by ambulance to Our Lady of Lourdes emergency room where she was treated by an internal medicine specialist, Dr. Cindy Leissinger.
Dr. Leissinger found that plaintiff had normal pupilary reactions and that her extrocular muscles were fine. Dr. Leissinger performed neurological and fundoscopic exams which were also normal. She examined plaintiff's ears and nose and found no evidence of a bloody discharge. Plaintiff was tender to palpitation along the side of her abdomen and on the posterior muscles of her neck; however, the only apparent manifestations of an injury were hematomas on the left forehead above the left eyebrow and on the left abdomen. Plaintiff also sustained a laceration on her right elbow from which a minute piece of glass was removed. The rest of the examination, including X-rays of the skull and spine, were normal. Dr. Leissinger diagnosed head trauma and hospitalized plaintiff overnight for observation. Plaintiff was discharged the following day with a cervical collar.
Plaintiff returned for a second hospital visit on September 8th complaining of severe pains in her neck and head. She also *848 complained that the pain was radiating into her arms. Plaintiff returned later that month and again on October 8th with continued complaints of pain in her neck. In addition, she complained of severe headaches and pain in her upper back region. After the last visit, Dr. Leissinger recommended physical therapy.
Plaintiff was also treated for this accident between August 23, 1986 and April 27, 1987 by her personal physician, Dr. Louis J. Weinstein. During this period, plaintiff made complaints of pain and rigidity in her left shoulder, chest, abdomen, and entire neck area. She further complained of headaches and dizziness. Dr. Weinstein diagnosed general contusions and felt plaintiff was suffering from whiplash. Dr. Weinstein prescribed medication for pain and muscle relaxants. He did not undertake any objective treatment procedures nor did he refer plaintiff out for consultation.
Plaintiff filed this suit on October 27, 1986, alleging that Broussard's negligence was the sole cause of the accident, and that the collision resulted in injuries to the bones, muscles, ligaments, tissues, neck and other parts of her body. Plaintiff sought damages for her injuries, past and future medical expenses, and property damage incurred as a result of the collision.
The matter was tried before the court on June 15, 1987. At the close of trial, defense counsel made a motion to dismiss St. Paul from the lawsuit on the basis that there was no insurance policy, or other proof, submitted to the court which showed St. Paul was liable for Broussard's actions. The trial judge granted the motion and the remainder of the case was taken under advisement.
The trial judge rendered written reasons for judgment on June 26, 1987, finding liability on the part of Broussard and his employer, Arceneaux Ford, Inc. On the issue of damages, the trial judge determined that plaintiff was injured in the accident, but that the only injuries proven by a preponderance of the evidence were the bruises on the head and side and a laceration to the right arm. Plaintiff was awarded $500.00 in damages, with all costs of court to be paid by the defendant. The costs included an expert witness fee of $200.00 for Dr. Weinstein and of $350.00 for Dr. Lessinger. No award was made for medical expenses or property damage as plaintiff failed to submit evidence proving these elements of damages. A formal written judgment was subsequently signed on July 6, 1987. From this judgment plaintiff timely appealed.

QUANTUM
Plaintiff contends the general damage award of $500.00 constituted an abuse of discretion in light of the evidence presented at trial.
Before this court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Ard v. Samedan Oil Corp., 483 So.2d 925 (La.1986); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Aucoin v. Hartford Acc. & Indem. Co., 499 So.2d 1042 (La.App. 3 Cir.1986). The test on appellate review of whether the trier of fact abused its discretion by making an excessive award of damages is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact. The converse of this rule is also true: in determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Malmay v. Sizemore, 474 So. 2d 1358 (La.App. 2 Cir.1985), and cases cited therein, writ granted, 477 So.2d 1115 (La.1985), affirmed, 493 So.2d 620 (La. 1986). In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury and an award cannot be modified unless it is unsupported by the record. LSA-C.C. Art. 2324.1.
At trial plaintiff testified on direct examination that she received injuries to *849 the side of her head, back of her neck, and sustained bruises on her ribs. Additionally she stated that she has suffered headaches three to four times a week since the accident. Under cross-examination plaintiff testified that because of the accident (1) she had trouble digesting her food; (2) pre-existing heart pain had been aggravated; (3) she has almost died seven times; (4) she almost lost her left breast; and (5) she had to take enemas twelve times a day because of constipation.
The testimony of plaintiff's treating physicians established that the majority of her complaints are unfounded and are probably the result of mental delusions. Dr. Leissinger testified that plaintiff's complaints are primarily of pain in the neck, head and upper back area. As previously stated, all the routine tests produced normal results, and the only objective signs of injury were bruises to the head and abdomen and a laceration to the right arm. Moreover, the hospital records from which Dr. Leissinger testified noted that plaintiff gave a disjointed history of having cancer in her breasts and one foot for which she allegedly had surgery but Dr. Leissinger could find no evidence of surgery or that a biopsy had been done. She concluded from the history that plaintiff appears to be suffering from long-standing delusions and is mentally unstable. The medical records also show that plaintiff did admit to being treated in the past for a mental disorder of an unknown type.
Plaintiff's claims of neck, shoulder and back injuries were corroborated by Dr. Weinstein's testimony; however, the credibility of his testimony regarding the extent of plaintiff's injuries and causal connections to the subject accident was greatly diminished by the introduction of medical records by defense counsel showing that Dr. Weinstein had been treating plaintiff since 1977 for a neck injury received on March 2, 1977. Also, under cross-examination, Dr. Weinstein admitted that plaintiff had not complained of back pain since February 23, 1987. When asked if plaintiff is mentally ill, he responded "Well, to a certain degree."
Plaintiff's testimony concerning her on-going medical complaints was made suspect when it was established that plaintiff had been involved in another motor vehicle accident on January 14, 1987 in which she was rear-ended by another vehicle. Plaintiff maintained at trial that she had only injured her arm in the accident; however, defense counsel offered into evidence a petition for damages filed after the accident in which plaintiff alleged she had sustained injuries to her right shoulder, right hip, right leg, right knee, back and head. Dr. Weinstein testified that plaintiff never advised him of the second accident or that she had filed a lawsuit.
Plaintiff's testimony further established that she is extremely litigious. In addition to the above mentioned lawsuit, she also filed a lawsuit against her beauty salon alleging that a chemical burn received from a permanent to her hair caused cancer to appear in her breast and foot. Additionally, plaintiff admitted that she filed suit against the Southwest Rehabilitation Center in Lafayette, Louisiana, seeking damages for injuries to her neck and tailbone after she slipped and fell on the premises.
In his reasons for judgment the trial judge made the following finding of fact:
"There is no doubt that an accident occurred between the vehicle driven by the defendant and that driven by the plaintiff, nor is there any doubt that Ms. Charles was injured in the event. But the testimony in this matter fails to establish, by a preponderance of the evidence, that Ms. Charles sustained the extensive damage of which she complains. The only injuries proven, by a preponderance of the evidence, are bruises to the head and side and a laceration to the right arm from which a minute piece of glass was removed. It might be possible that Ms. Charles is the so-called `egg shell plaintiff' who, from these injuries, developed the damage of which she complains. But that causal relation was not established by a preponderance of the evidence. The testimony of Dr. Weinstein to that effect was not believable. Rather, the evidence preponderates *850 that the plaintiff suffers from delusions."
It is well settled that factual conclusions of the trial judge, particularly where the credibility of a witness is involved, are entitled to great weight and will not be disturbed on appeal in the absence of a showing that they are clearly wrong. Dugas v. Mouton, 460 So.2d 739 (La.App. 3 Cir. 1984). From our review of the evidence and testimony adduced at trial, we cannot conclude that the trial judge was clearly wrong in determining that plaintiff suffers from delusions and that the only injuries proven by a preponderance of the evidence were bruises to the head, side, and a laceration to the right arm. Accordingly, we find that the damage award was not inadequate nor was it a clear abuse of the trial court's discretion.
Although plaintiff does not specifically raise the issue as an assignment of error, she argues that Dr. Weinstein should be compensated with an expert witness fee that is as much as that of Dr. Leissinger. Defendants contend on appeal that the award of expert witness fees was within the realm of discretion afforded the trial court and that any difference between the awards can be explained on the basis that Dr. Weinstein was a general practitioner and Dr. Leissinger was a specialist.
The Louisiana jurisprudence reflects that the awarding of expert witness fees is within the wide discretion of the trial court and, in the absence of abuse of that discretion, its determination will not be disturbed on appeal. LSA-R.S. 13:3666; Bonfanti v. Davis, 487 So.2d 165 (La.App. 3 Cir.1986). When there is nothing in the record to either support or refute the expert's fee awarded by the trial court, there is no basis for review. D'Angelo v. New Orleans Public Serv., Inc., 405 So.2d 1262 (La.App. 4 Cir.1981), writ den., 407 So.2d 748 (La.1981).
Plaintiff failed to present any evidence at trial which either supports or refutes the amount of the expert witness fees awarded to Dr. Weinstein and Dr. Leissinger. Therefore, we conclude there was no abuse of discretion by the trial court in fixing the expert witness fees and taxing these fees as costs of court.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.