664 So.2d 655 (1995)
Marie REVEL, Plaintiff-Appellant,
v.
Bruce C. SNOW, et al., Defendants-Appellees.
No. 95-462.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1995.
Writ Denied February 2, 1996.
*656 Terry Eli Theriot, for Marie Revel.
Alex Andrew Lopresto III, Preston D. Cloyd, Ricky Lafleur, for State Farm Mutual Auto Ins. Co.
*657 Before DOUCET, C.J., and AMY and SULLIVAN, JJ.
AMY, Judge.
This is an appeal by Marie Revel from a verdict in a jury trial. The parties stipulated as to liability. The jury awarded appellant the following damages: (1) $15,000 for past, present, and future pain and suffering, (2) $5,000 for loss of enjoyment of life, and (3) $5,000 for past medical expenses. The past medical expenses were subject to a credit of $10,000.00 previously paid by State Farm Mutual Automobile Insurance Co.
Appellant makes the following assignments of error: (1) that the trial court awarded inadequate damages for pain and suffering, mental anguish and distress, emotional distress, loss of enjoyment of life, past, present and future, past and future medical expenses, and loss of past income, and (2) that the trial court erred in failing to grant a J.N.O.V. on the issue of quantum. For the reasons which follow, we affirm the award of general damages and affirm the award of special damages with the exception of past medical expenses, which we amend and affirm as amended.

FACTS
On October 7, 1991, Marie Revel was a passenger in an automobile being driven south on Highway 167. A car driven by Heather Snow, the minor daughter of Bruce Snow, made an improper left turn in front of the car in which appellant was a passenger. A collision ensued. Ms. Revel was transported by ambulance to the emergency room at Lafayette General Medical Center. She arrived complaining of soreness in her neck, lower back and knees. An examination by the emergency room physician, Dr. Charles Pearson, revealed acute cervical muscular strain, lumbosacral strain, and an abrasion over her right knee. The doctor was of the opinion that the accident was the cause of the pain and these injuries.
On October 10, 1991, Ms. Revel was examined by Dr. William Smith, an orthopedic surgeon. She was complaining of pain and stiffness in her neck, lower back, right wrist and right knee. Dr. Smith examined Ms. Revel's neck, wrist and knee. He deferred to Dr. John Clifford, a neurosurgeon, with regard to her lower back complaints since Dr. Clifford had performed two previous lumbar surgeries on Ms. Revel. Dr. Smith diagnosed Ms. Revel as having a moderate cervical sprain superimposed on mild degenerative arthritis of the cervical spine with no neurological involvement. He also was of the opinion that she suffered from a sprain or soft tissue injury of the neck, a sprain of the flexor ulnaris tendon in the right wrist, and an area of contusion and abrasion with probable post-traumatic chondromalacia of the right knee. Dr. Smith opined that these problems were caused by the accident because he had no reason to believe otherwise.
Ms. Revel saw Dr. Clifford on October 18, 1991, complaining of pain in her lower back. Based upon an examination, an MRI of the lumbar spine, and Ms. Revel's complaints, Dr. Clifford opined that Ms. Revel suffered from a soft tissue injury superimposed on the incompletely healed lower back. Her lower back was incompletely healed due to two previous surgeries on the lumbar spine, for which Ms. Revel had still complained of pain after the two surgeries but before the accident. Dr. Clifford had assigned a 20% disability to the body as a whole because of these two previous surgeries. Dr. Clifford believed that the accident caused the cervical strain diagnosed by Dr. Smith and also caused the aggravation of her previous back condition, namely the incompletely healed lumbar area.
Ms. Revel also saw Dr. Laxman Kewalramani, a specialist in physical medicine and rehabilitation and pain management. His original diagnosis was cervical and lumbar muscular ligamentous pain syndrome. He believed the accident caused the problems with the cervical spine and aggravated a pre-existing condition in the lumbar spine. After continued complaints of pain, Dr. Kewalramani ordered a facet arthrography to be performed by Dr. Charles Aprill, a radiologist.
Dr. Aprill performed the facet arthrogram which, in his opinion, revealed a facet joint problem in the cervical spine, primarily at C2-3 and secondarily at C5-6 and 6-7. He testified that an MRI is totally insensitive to *658 facet joint pathology. Dr. Aprill also testified that it was reasonable to believe that these problems were caused by the accident of October 7, 1991, assuming Ms. Revel had no prior neck problems. Dr. Kewalramani testified that it is possible that Ms. Revel had degeneration in the facet joints which was aggravated by the accident. Based upon the above test results, Ms. Revel was referred to Dr. Kenneth Vogel, a neurosurgeon.
Dr. Vogel initially examined Ms. Revel on February 9, 1993. He diagnosed Ms. Revel as having cervical facet arthropathy and chronic lumbar strain superimposed on the previous lumbar injury and surgeries. Based upon this diagnosis, Dr. Vogel performed a surgical procedure on Ms. Revel known as a cervical neurotomy.
Soon after the surgery and Ms. Revel's release from the hospital, she returned due to complaints of coughing, fever and chest pain. X-rays were taken of Ms. Revel's chest. Dr. Frank Monte, a specialist in internal medicine, diagnosed her as having right lobe pneumonia. Dr. Monte treated Ms. Revel for the pneumonia and released her from the hospital. Although Ms. Revel had two risk factors for pneumonia, namely, smoking and being overweight, Dr. Monte believed that the general anesthesia given to Ms. Revel prior to the neurotomy, which interfered with her normal body defenses, triggered the pneumonia. Medically, he believed there was a causal relationship between the general anesthesia and the pneumonia.
Dr. Vogel believed that the cervical neurotomy was a success. He assigned her a 10 to 15 percent temporary disability of the body as a whole. Since the full effects of the surgery would not be felt for a full year after the surgery, Dr. Vogel did not assign a permanent disability. He did testify that 85% of the people who have the type of procedure conducted on Ms. Revel have as much as 90% pain relief. He discharged Ms. Revel.
Dr. Kewalramani also believed that the surgery helped Ms. Revel's condition. Dr. Kewalramani testified that he could not assign a permanent disability rating to Ms. Revel since he did not conduct an examination for that purpose. In fact, Ms. Revel's permanent disability is not determined anywhere in the record.
Dr. Aprill testified that the cervical neurotomy was an appropriate procedure based upon the results of the facet arthrogram.
With regard to Ms. Revel's psychological health, she began to see Mr. Tim Kemery, a clinical social worker, on July 17, 1992, with the following symptoms: insomnia, headaches, lack of energy, irritability, crying spells, feelings of sadness and helplessness, problems concentrating, memory difficulty, and weight gain. Ms. Revel revealed the following history to Mr. Kemery: She had a failed marriage of 21 years. She had bouts with both breast cancer and skin cancer and underwent a radical mastectomy for the breast cancer. She had two previous lumbar surgeries. Her live-in companion was diagnosed with cancer and died within a year. She was in an automobile accident and underwent a cervical procedure as a result. Also, she had a family history of depression.
Mr. Kemery opined that she was clinically depressed and suffering from a major depression. He referred her to Dr. Kantack, a psychiatrist, because he felt her depression was biomedical in nature and needed treatment through medication. He felt it was caused by her body chemistry and exacerbated by her recent losses and pain. Mr. Kemery testified that he cannot isolate any one event as the cause of Ms. Revel's depression, but he believed that the loss of her live-in companion was a very big factor.
Dr. Kantack saw Ms. Revel on July 20, 1992. He believed she had a major mood disorder which needed to be treated with medication. He believed that she had several different "stressors," but that the automobile accident was "the straw that broke the camel's back." He prescribed medication, which Ms. Revel continued to take up to the time of trial. Both Dr. Kantack and Mr. Kemery believed that the medication has helped Ms. Revel.
Ms. Revel was 50 years old at the time of trial. She testified that the pain after the accident prohibited her from living a normal life. She claims she could not cook, wash dishes, and could not wear her prosthesis and *659 bra, which was important to her since she had the mastectomy. However, she testified that the pain "was worse after the accident," which indicates she was still in pain prior to the accident from the two previous back surgeries. Also, Ms. Revel continued to attend school at L.S.U., full-time, and was commuting from Butte La Rose to Baton Rouge for classes. She graduated in May of 1992. Ms. Revel then attended Tulane University for paralegal training. She now attends Loyola Law School at night, while working part-time as a paralegal in New Orleans. Ms. Revel's daughter testified that her mother still has problems, but that her neck is better and that most of her complaints are with her lower back.

ANALYSIS

CAUSATION
The jury awarded plaintiff (1) $15,000 for past, present, and future pain and suffering, (2) $5,000 for loss of enjoyment of life, and (3) $5,000 for past medical expenses.
To be entitled to recover damages in a tort suit, the plaintiff must prove by a preponderance of the evidence that: (1) injuries were sustained and (2) the injuries were caused by the accident. American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991). Since the existence of injuries and causation of those injuries are factual determinations, the trier of fact's resolution of these issues is normally reviewed under the manifest error standard of review. Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App. 3 Cir.), writs denied, 457 So.2d 1195, 1198 (La.1984). In the case before us, the plaintiff introduced evidence at trial of multiple injuries requiring several types of medical treatments and diagnostic testing, all of which she alleged was causally linked to the accident. Since the jury rendered a general verdict, we are unable to ascertain which injuries it found to be causally related to the accident. When no specific findings of fact are issued, appellate courts consider the record as a whole in the light most favorable to the appellee. Homer Nat. Bank v. Springlake Farms, Inc., 616 So.2d 255 (La.App. 2 Cir.1993); Jeffers v. Hansen, 441 So.2d 283 (La.App. 4 Cir.1983); Texas General Petroleum Corp. v. Brown, 408 So.2d 288 (La.App. 2 Cir.1981). Therefore, we consider the record as a whole in the light most favorable to the defendant in order to determine which injuries a rational fact finder must have concluded were causally related to the accident.
Based upon the record as a whole, reading it in a light most favorable to the defendants, we conclude the jury would have erred had it not found that Ms. Revel suffered the following injuries as a result of the accident: (1) minor knee and wrist injuries, (2) an aggravation of a pre-existing condition of lower back, (3) an injury to her neck, which may have been an aggravation of pre-existing degenerative changes, and (4) pneumonia. We reach this conclusion because the record clearly demonstrates that the plaintiff introduced sufficient evidence to meet her burden of proving causation by a preponderance of the evidence and the defendants introduced no evidence to the contrary. Therefore, on review, we conclude that appellant is entitled to recover damages for those injuries.
We also find that it would not have been error for the jury to have concluded that the mental injuries suffered by Ms. Revel were not caused by the accident. Two experts testified; both believed Ms. Revel's depression to be biomedical in nature. One stated that he could not isolate any one thing as having triggered Ms. Revel's depression, but felt that the death of her live-in companion was a big factor. The other stated that Ms. Revel had many "stressors" which contributed to her depression, but that the accident was "the straw that broke the camel's back." When testimony of expert witnesses differs, it is within the trier of fact's discretion to determine what is the most credible evidence. Opelousas Production Credit Ass'n. v. B.B. & H., Inc., 587 So.2d 812 (La.App. 3 Cir.1991). Given the testimony of the experts here, it would have been proper for the jury to conclude that a single cause for Ms. Revel's depression could not be isolated. It would also be proper to conclude that the loss of her live-in companion was what triggered her depression, thus not entitling *660 Ms. Revel to damages for her mental injuries.

GENERAL DAMAGES
With our resolution of these causation issues, we now review the adequacy of the damages awarded. With respect to the general damage award, appellant asserts that the jury award for pain and suffering, mental anguish and distress, emotional distress, and loss of enjoyment of life was inadequate.
In assessing the quantum of general damages, the Louisiana Supreme Court has stated that "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); See also: La.Civ.Code art. 2324.1. "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." Youn, 623 So.2d at 1261. The appropriate test under this rule of law is whether, viewing the evidence in the light most favorable to the defendant, a reasonable trier of fact could have assessed damages as they were assessed. Charles v. Arceneaux Ford, Inc., 542 So.2d 846 (La.App. 3 Cir.1989).
In light of the above test for the review of general damages, we particularly note the following:
Ms. Revel testified that the pain after the accident prohibited her from living a normal life. She claims she could not cook, wash dishes, and could not wear her prosthesis and bra, which was important to her since she had a mastectomy. However, there is evidence to indicate that Ms. Revel was suffering pain from the two previous lumbar surgeries before the accident happened. Also, after the accident, Ms. Revel continued to commute from Butte La Rose to Baton Rouge to attend L.S.U. full-time. When she graduated from L.S.U., she moved to New Orleans to attend paralegal school. She now attends Loyola Law School at night while working 20 hours per week as a paralegal at a New Orleans law firm. Ms. Revel's daughter testified that Ms. Revel still has complaints of pain, but that most of her complaints are of pain in her lower back.
All doctors testified that Ms. Revel's lumbar injury was an aggravation of a pre-existing condition. There is evidence to indicate that Ms. Revel was still suffering from pain from the two previous surgeries at the time of the accident. Therefore, the evidence viewed in the light most favorable to defendant could lead a trier of fact to conclude that Ms. Revel suffered little, if any, additional pain in her lower back.
Ms. Revel did undergo a surgical procedure for the treatment of the facet joint pathology. Doctors Kewalramani and Vogel both believe the surgery was a success. Neither doctor assigned a permanent disability to Ms. Revel. Dr. Vogel testified that the full effects of the surgery would not be felt for a full year, but he did state that 85% of those who undergo a neurotomy have as much as 90% pain relief. Dr. Vogel, Dr. Kewalramani and Ms. Revel's daughter all testified that her neck pain is better.
Ms. Revel was hospitalized for eight days for pneumonia. She was 100% cured with no residual effects.
With regard to the knee and wrist injury, the injuries quickly improved and were not a major issue at trial.
Considering all of the above evidence in the light most favorable to the defendant we cannot say that the jury abused its "vast" discretion in awarding $20,000 in general damages. Accordingly we leave this award undisturbed. The first assignment of error lacks merit.

SPECIAL DAMAGES

A. Past Medical Expenses
Appellant asserts that the trial court erred in awarding inadequate damages for past medical expenses. "A Plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of an injury." White v. Longanecker, 93-1122 (La.App. 1 Cir. 5/23/94), 637 So.2d *661 1213, 1218, writ denied, 94-1704 (La. 10/7/94), 644 So.2d 640. We have already concluded that a reasonable trier of fact must have concluded that Ms. Revel suffered, at the very least, the following injuries as result of the accident of October 7, 1991: (1) minor injuries to right wrist and right knee, (2) aggravation of a pre-existing condition in her lower back, (3) aggravation of a pre-existing injury to her cervical facet joints, and (4) pneumonia.
A tortfeasor is liable for the full amount of medical expenses incurred in treatment of injuries for which he or she is responsible. This court has held that a jury errs by not awarding the full amount of medical expenses incurred as a result of injuries caused by the accident when the record demonstrates that the victim has proven them by a preponderance of the evidence. Andres v. Liberty Mut. Ins. Co., 568 So.2d 651 (La.App. 3 Cir.1990). The rule is applicable unless plaintiff has incurred medical expenses in bad faith. Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2 Cir.1993).
There are no allegations or evidence introduced at trial of bad faith on Ms. Revel's part in receiving medical treatment; therefore, appellee is liable for the full amount of medical expenses incurred in the treatment of the knee injury, wrist injury, aggravation of pre-existing lumbar condition, aggravation of the pre-existing cervical condition, and pneumonia. Accordingly, we conclude that the jury erred in not awarding the full amount of medical expenses incurred in the treatment of these injuries. Appellant introduced medical bills totaling $50,835.73. After a review of the medical bills introduced into evidence, we conclude that the total medical expenses attributable to those injuries caused by the accident is $34,419.74. This is the amount the jury should have awarded; therefore, we amend the judgment to increase the award for past medical expenses from $5,000 to $34,419.74, subject to a credit of $10,000 previously paid by State Farm Mutual Automobile Insurance Co.

B. Future Medical Expenses
Appellant next argues that the jury abused its discretion in failing to award an amount for future medical expenses. However, in order to recover for future medical expenses, they "must be established with some degree of certainty, and awards will not be made in the absence of medical testimony as to the requirement for such expenses and their probable cost." James v. Webb, 94-162 (La.App. 3 Cir. 10/5/94), 643 So.2d 424, 429, writ denied, 94-2670 (La. 12/16/94), 648 So.2d 396. The only medical testimony, with regard to future medical expenses for injuries caused by the accident, indicates that the only future treatment Ms. Revel will need is symptomatic treatment, i.e. medication and physical therapy. However, there is no testimony establishing the probable cost for such treatment. Thus, we conclude that the jury did not err in refusing to award future medical expenses for the symptomatic treatment.
While the record demonstrates that there is a slight possibility that the plaintiff may require a future surgery, Doctors Vogel and Kewalramani do not anticipate such treatment. Considering this evidence in the light most favorable to the defendant, we will not disturb the jury's denial of future medical expenses.

C. Loss of Past Income
"Claims for past lost wages must be established with certainty." Dupre v. Exxon Pipeline Co., 93-1528 (La.App. 3 Cir. 6/1/94), 638 So.2d 1118, 1121, writ denied, 94-2200 (La. 11/18/94), 646 So.2d 379. We find that the trial court's denial of an award for past loss of income was proper because the evidence lacks sufficient proof that she suffered such a loss. She was unemployed at the time of the accident. In fact she had not worked since 1989. She was attending school at the time of the accident and continues to do so today. The only evidence introduced at trial that she would have worked after the accident and before trial is her own testimony indicating she might have sought employment after the accident had she not been injured. This is speculative and does not establish with certainty that she suffered a loss of income. Therefore, we leave the trial court's decision with respect to this element of damages undisturbed.
*662 Based on the foregoing, we conclude that this assignment of error has merit with respect to past medicals and we amend the award to $34,419.74. However, plaintiff's assignment lacks merit with respect to future medicals and past lost wages.

J.N.O.V.
Appellant also asserts that the trial court erred in failing to grant a J.N.O.V. on the issue of quantum. Because our resolution of the previous assignments of error necessarily disposes of the issues raised by the appellant in this assignment of error, we deem it unnecessary to consider whether the trial court abused its discretion in denying the motion for a J.N.O.V.

DECREE
For the reasons given above, we affirm the trial court's award of general damages and affirm the award of special damages with the exception of past medical expenses. We amend the award of past medical expenses to $34,419.74 and affirm as amended. Costs are assessed to appellee.
AFFIRMED AS AMENDED.