# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**12-72**

WANDA TURNER

VERSUS

**GUMARCO C. ESCOBEDO AND**
**IMPERIAL FIRE & CASUALTY INSURANCE COMPANY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ABBEVILLE CITY COURT
PARISH OF VERMILION, NO. 16,130
HONORABLE RICHARD J. PUTNAM, III, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

**Byron A. Richie**
**Paul D. Oberle, Jr.**
**Richie, Richie & Oberle, L.L.P.**
**Post Office Box 44065**
**Shreveport, Louisiana 71134-4065**
**(318) 222-8305**
**Counsel for Defendant/Appellant:**
      **Imperial Fire and Casualty Ins. Co.**

**Patrick Damas Moresi**
**The Moresi Firm**
**Post Office Box 1140**
**Abbeville, Louisiana 70511-1140**
**(337) 898-0111**
**Counsel for Plaintiff/Appellee:**
      **Wanda Turner**

**KEATY, Judge.**

In this personal injury case, the trial court awarded $8,500.00 in general damages and $1,800.00 in special damages to a plaintiff who allegedly injured her neck and back and began suffering from migraine headaches as a result of a motor vehicle accident. After carefully reviewing the record, we affirm the trial court's judgment in part, reverse the judgment in part, and render judgment.

## Facts and Procedural History

Plaintiff, Wanda Turner, a forty-seven-year-old female, was involved in a motor vehicle accident on September 4, 2010. Liability was not disputed. In this accident, Ms. Turner's airbag did not deploy, and she did not allege damages to her vehicle. At the time of this accident, Ms. Turner was being treated for high blood pressure, general anxiety, major depression, and chronic back pain, among other things. She was taking four Lortab pills each day in addition to a myriad of other medication.

Approximately seven weeks later on October 28, 2010, Ms. Turner was involved in a second accident in which she rear-ended a trailer. This at-fault accident caused her airbags to deploy and knocked her unconscious. She was brought to the emergency room by ambulance, where she complained of neck and back pain but, ultimately, disconnected herself from the monitors and stretcher and abandoned the emergency room because, as she testified, she believed the hospital is "an animal hospital."

On December 4, 2010, Ms. Turner filed suit against the owner of the vehicle involved in the September 4 accident and his insurer, Imperial Fire and Casualty Insurance Company, which is the appellant in this appeal, alleging that she injured her neck and back and began suffering from migraines as a result of the September 4 accident.

At trial, the only evidence presented was a certified copy of the insurance policy, certified medical records, a few medical bills, and Ms. Turner's self-serving testimony. Ms. Turner testified that she had only been involved in a 2007 work-related accident and the two 2010 accidents. On cross-examination, however, Ms. Turner admitted that she was involved in four additional accidents which took place in 1995, 2001, 2003, and 2006.[1] Her testimony at trial that her neck pain lasted several months conflicted with her deposition testimony in which she said the neck pain only lasted five weeks. When questioned on cross-examination about this difference, she blamed it on her depression, saying, "I was in a depression. I couldn't tell you if it was Monday, Friday, five weeks, six months." Ms. Turner was being treated with medication for depression when the accident occurred, thereafter, and at the time of trial. Ms. Turner also credits all of her injuries to the first accident, in which the impact of the collision was not strong enough to trigger the airbag, rather than the second accident in which the airbag deployed and Ms. Turner was brought to the emergency room on a stretcher after losing consciousness. When questioned about whether the second accident made the pain worse, she would only admit that it "irritated" the pain from the September 4 accident and denied that the second accident caused any of the pain from which she was allegedly suffering. Ms. Turner also admitted at trial that back surgery and physical therapy had been recommended prior to the September 4 accident, and she had not engaged in either.

Ms. Turner's testimony is inconsistent with the certified medical records admitted into evidence. Although she claims her pain from the accident was so

---

[1] A fifth additional accident took place in 2009 and is reflected in her medical records. When questioned about the 2009 accident, she denied having been in that accident, saying it was her mother who was involved, and that Dr. Alleman wrote it in the wrong patient's chart. Dr. Alleman's records indicate that Turner suffered from a neck injury as a result of the 2009 accident.

bad that she could not walk without help, Ms. Turner did not see a single doctor specifically for her accident-related injuries. She was well enough to drive a car by October 28. In the time between the September 4 and October 28 accidents, Ms. Turner saw Dr. Edgardo Concepcion once on September 9, 2010, and Dr. Howard Alleman once on October 13, 2010. She testified that both of these visits had been scheduled prior to the accident. Her medical records are void of any mention of back pain prior to the October 28 accident. Her alleged neck pain is referenced in a single notation in Dr. Alleman's records. In that same entry, he notes that she was complaining of headaches. There is not a scintilla of evidence that Ms. Turner was suffering from migraines, save for her own word choice. Although she testified that she was suffering from migraines several times a week and the pain was a ten on a scale of one to ten, she never saw a doctor for or was diagnosed as having migraines. When questioned about her migraines on cross-examination by Imperial Fire's attorney, she retorted, "I want to jump this man!"

Ms. Turner's records indicate that she did not tell a physician about the September 4 accident until October 13, and that she did not mention the October 28 accident to either of her doctors. Her records indicate that she did not mention back pain to any doctor until after the October 28 accident. At that time, Dr. Alleman ordered an MRI, but noted that he did not think the September 4 accident caused the back pain. The MRI was performed on November 8, 2010, and did not present evidence of any additional trauma to her back. Ms. Turner's records are also void of any reference to her needing assistance to enter or exit the office or examination room or being incapable of moving her extremities. Although Ms. Turner testified that her physician's records are better than her memory and that she would defer to Dr. Alleman's records, saying "whatever he says is the honest to God's truth, yes," she blamed any inconsistency between her

3

testimony and her medical records on the doctors, claiming they "forgot" to write down things she told them, or they wrote down incorrect information.

Despite the many inconsistencies in her testimony and the minimal references to the complained-of illness in her medical records, the trial court found in favor of Ms. Turner and awarded her a total of $8,500.00 in general damages ($3,500.00 for the migraines, $3,000.00 for exacerbation of her back condition, and $2,000.00 for her neck pain), and $1,800.00 in special damages for past medical treatment related to the September 4 accident.

Imperial Fire appealed, asserting that the trial court erred in "ignoring the medical evidence, [or] lack thereof, and accepting without question the unsupported and uncorroborated testimony of the plaintiff with respect to her alleged injuries," and the trial court erred in "crediting plaintiff with any credibility for testimony provided in support of her claims of injury." Ms. Turner answered the appeal seeking an increase in the damages awarded. For the following reason we affirm in part, reverse in part, and render.

## Discussion

### A. General Damages

Appellate review of a trial court's findings in a medical malpractice action is limited. It is well settled that a court of appeal may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong, and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable. *Rosell v. ESCO,* 549 So.2d 840 (La.1989). In reviewing a factfinder's factual conclusions, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Kaiser v. Hardin,* 06-2092 (La.4/11/07), 953 So.2d 802, 810; *Guillory v. Insurance Co. of North America,* 96-1084 (La.4/8/97), 692 So.2d 1029, 1031. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978). However, if a witness's story is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit

4

> the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *Rosell, supra* at 845.

*Johnson v. Morehouse General Hosp*., 10-387, pp. 11-12 (La. 5/10/11), 63 So.3d 87, 96.

The trial court found Ms. Turner to be a credible witness. Accordingly, we must afford great deference to the trial court's determination that the testimony she provided was true.

After carefully reviewing the record, we find that Ms. Turner did mention her neck pain and headaches to Dr. Alleman prior to her second accident. In his notes, she attributes the pain to the September 4 accident. Although detail about the type and severity of neck pain and headaches Ms. Turner suffered from are not in the record, it is reasonable to conclude that these two injuries resulted from the September 4 accident. Accordingly, the awards for these injuries ($2,000.00 for the neck pain and $3,500.00 for the migraines) are affirmed.

The record does not support an award for back pain. Prior to the September 4 accident, Ms. Turner was being treated for chronic back pain. At the time of the accident, she was taking four Lortab pills per day. After the September 4 accident, she made no mention of back pain to either of her treating physicians, even though she did ultimately mention neck pain and headaches to one of them several weeks after the accident. The first mention of back pain after the September 4 accident was on the date of the second, more severe accident. Ms. Turner told the medical staff in the emergency room that she was experiencing neck and back pain and then abandoned the emergency room when she felt she was not receiving adequate care. Several days later, on November 4, 2010, Ms. Turner complained of back pain to Dr. Alleman. She did not mention the second accident to him. Dr. Alleman ordered an MRI, the results of which "indicate[] the presence

of multiple relatively minor deviations from normal . . . which I doubt are related to recent trauma."

The record is clear that Ms. Turner was being treated for pre-existing back pain at the time of the accident and did not mention an increase in her back pain to Dr. Alleman when she complained of neck pain and headaches. It is clear that on the date of the second accident, Ms. Turner complained of neck and back pain and that she complained of back pain to Dr. Alleman a few days later. Accordingly, we find that the trial court was manifestly erroneous in finding that Ms. Turner suffered from back pain as a result of the September 4 accident. We reverse the portion of the judgment that awarded general damages in the amount of $3,000.00 to Ms. Turner for her back pain.

### B. Special Damages

In addition to the general damages awarded, the trial court also awarded Ms. Turner $1,800.00 for past medical treatment. "'A Plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of an injury.'" *Revel v. Snow*, 95-462, p. 10 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, 660, *writ denied*, 95-2820 (La. 2/2/96), 664 So.2d 655 (quoting *White v. Longanecker,* 93-1122, p. 9 (La.App. 1 Cir. 5/23/94), 637 So.2d 1213, 1218, *writ denied,* 94-1704 (La. 10/7/94), 644 So.2d 640). At trial, Ms. Turner admitted into evidence a receipt dated November 8, 2010, for $500.00 to Acadiana Physician Corporation, a receipt dated October 13, 2010, for $60.00 to Dr. Alleman,[2] a collection services letter dated August 28, 2011, indicating that a total of $906.00 was due to Acadiana Radiology Group and Abbeville Diagnostic Center for services rendered on November 8, 2010, and a pharmacy receipt dated November 4,

---

[2] We note that the transcript reflects that Exhibit P3 consisted of two receipts for Dr. Alleman, from October 13 and November 4, 2010; however, the record reflects that only one receipt was actually admitted into evidence.

2010, for $10.02 worth of medication. Ms. Turner testified that the $500.00 receipt was for the MRI, that the $60.00 receipt was for a visit to Dr. Alleman, and the $10.02 was for medication. She further testified that the $906.00 was for X-rays to see if anything was broken. We note that Dr. Alleman's records only reference sending her for an MRI, not X-rays, and that Dr. Victor Gunderson with Abbeville Diagnostic Center is the physician who reviewed Ms. Turner's MRI. Abbeville Diagnostic Center is one of the entities seeking payment through collection services. Regardless, the testing was performed after the second accident. Although the total of these bills is $1,476.02, the trial court awarded Ms. Turner $1,800.00 for past medical expenses.

"A tortfeasor is liable for the full amount of medical expenses incurred in treatment of injuries for which he or she is responsible." *Revel*, 664 So.2d at 661. The converse must also be true; that is, a tortfeasor should not be liable for medical expenses incurred in treatment of injuries for which he or she is not responsible. Having found that the record does not contain evidence that Ms. Turner's back was injured in the September 4 accident, we must reduce the award of past medical expenses to exclude all back-related treatment. After reviewing the evidence that was properly admitted and authenticated for past medical expenses, we find that Ms. Turner is only entitled to reimbursement for the October 13 visit to Dr. Alleman. Accordingly, we reverse the judgment insofar as it awarded $1,800.00 to Ms. Turner for past medical treatment and render judgment in the amount of $60.00, which reflects the evidence submitted by Ms. Turner for medical treatment in connection with the September 4 accident.

## Conclusion

For the foregoing reasons, we find that the trial court was not manifestly erroneous in finding that Ms. Turner injured her neck and suffered from headaches

7

as a result of the September 4 accident. We affirm its awards of $2,000.00 and $3,500.00 respectively for those injuries. We find that the trial court was manifestly erroneous in finding that Ms. Turner injured her back as a result of the September 4 accident. We reverse that finding and the damages award associated therewith in the amount of $3,000.00. We further find that although Ms. Turner submitted into evidence receipts totaling $1,476.02 for medical treatment, nearly all of those bills and receipts were incurred after the second accident on October 28, 2010, and in connection with her back pain. Accordingly we reverse the trial court's grant of $1,800.00 for past medical treatment and render judgment in favor of Ms. Turner for $60.00, reflecting the amount paid for her visit to Dr. Alleman on October 13. We deny Ms. Turner's request for additional damages on appeal. Half of the costs of this appeal are assessed against Ms. Turner, and half are assessed against Imperial Fire.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**