NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-862

MEAGAN LEMOINE, ET AL.

VERSUS

LIONEL AUGUSTINE, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2014-1044-B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

DAVID E. CHATELAIN\*
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy H. Ezell, Shannon J. Gremillion, and David E. Chatelain, Judges.

AFFIRMED.

---

\*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

Henry G. Terhoeve
Sean Avocato
Schutte, Terhoeve, Richardson, Eversberg, Cronin, Judice, & Boudreaux

501 Louisiana Avenue
Baton Rouge, LA 70802
(225) 387-6966
COUNSEL FOR DEFENDANTS/APPELLANTS:
      State Farm Mut. Auto. Ins. Co.
      Mary Augustine

Paul M. Lafleur
Stafford, Stewart & Potter
P. O. Box 1711
Alexandria, LA 71309
(337) 487-4910
COUNSEL FOR DEFENDANT/APPELLEE:
      State Farm Mut. Auto. Ins. Co., UM Insurer of J. Barrere

Cory P. Roy
Brandon J. Scott
Benjamin D. James
Roy & Scott, Attorneys at Law
107 North Washington Street
Marksville, LA 71351
(318) 240-7800
COUNSEL FOR PLAINTIFFS/APPELLANTS:
      Meagan Lemoine, Indiv.
      Johnathon Barrere, Indiv.
      J. B. (child)
      A. B. (child)
      Sheree Cazelot

**CHATELAIN, Judge.**

In this personal injury case, defendants appeal the trial court's judgment casting them with fault for claims they allege had prescribed and further were not proven by plaintiffs. Additionally, plaintiffs appeal the trial court's award of general damages. Finding no manifest error or abuse of discretion in the trial court's rulings on prescription, fault, and damages, we affirm.

## FACTS AND PROCEDURAL HISTORY

The present litigation involves an accident that allegedly occurred on May 22, 2014, while Meagan Lemoine (Lemoine) was operating a 2001 Chevrolet 1500 HD pick-up truck (truck) owned by Johnathan Barrere (Barrere), the father of her children. Also present in the vehicle were Lemoine's daughters—Jaylynn Barrere (two-and-a-half years old) and Annlin Barrere (two months old)—and her sister, Sheree Cazelot (Cazelot).

As the evidence shows, Lemoine and her passengers were traveling in a northerly direction on Louisiana Highway No. 1 (La. 1) near Marksville with plans to visit a pediatrician when the accident occurred. At that time, La. 1 was undergoing construction to expand the two-lane portion into five lanes. Due to the construction, the traffic was very heavy on that date. As Lemoine was stopped under the traffic light at the intersection of Tunica Drive and South Preston Street, between the Avoyelles Parish Jail and Tobacco Plus, a white 1998 Jeep Grand Cherokee (Jeep) allegedly rear-ended her vehicle. However, neither Lemoine nor Cazelot saw who was actually driving the Jeep, and they did not even notice the Jeep until it "bumped" their vehicle.

After the impact, Lemoine turned into the parking lot of Royal Cajun Fried Chicken to assess the damage to the trailer hitch that extended from the truck's bumper. She then followed the Jeep to AutoZone, which was a short distance

farther north on La. 1. Lemoine witnessed an African-American woman exiting the Jeep and entering AutoZone, and Cazelot got out of the truck and took pictures of the Jeep with Lemoine's cell phone, including a photograph of the license plate.

Lemoine contacted Barrere who told her to go to the police. Thereafter, Lemoine and Cazelot went to the Avoyelles Parish Sheriff's Office where they were directed to report the accident to the Marksville Police Department. The Marksville police incident report shows Lemoine reported the accident at 4:55 p.m. that afternoon at which time photographs were taken of the truck. An officer even responded to AutoZone in search of the Jeep, but the vehicle was no longer on location. The officer's photographs taken of the truck, however, were not available for trial and are not in evidence.

Through investigation, it was determined that Lionel Augustine (Lionel) owned the vehicle in question. In mid-August of 2014, Mary Gayle Augustine (Mary), Lionel's wife, received a letter of representation from the law office of plaintiffs' counsel concerning the subject accident. The receipt of the letter upset the Augustines as both contended they were not involved in an accident on May 22, 2014. Looking into their activities on that day, Mary ascertained that her husband was not in Marksville but that she did drive their Jeep into Marksville on La. 1 after leaving work in Mansura specifically to visit the AutoZone that afternoon. Receipts from the store show Mary made purchases that day at 4:05 p.m. and 4:12 p.m. While she could not recall if the traffic was heavy, she nevertheless staunchly contended she was not involved in any accident.

As a result of the alleged accident, Lemoine and Barrere filed suit, individually and on behalf of their minor children, on October 14, 2014, against Lionel and his insurer, State Farm Mutual Automobile Insurance Company (State Farm), in which Cazelot joined as an additional party plaintiff (collectively

2

plaintiffs). State Farm was also named as a defendant in its capacity as Barrere's uninsured/underinsured motorist insurance carrier (State Farm UM). However, plaintiffs did not amend their petition to add Mary as a named defendant until November 20, 2015.

In answer to plaintiffs' amended petition, defendants raised the defense of prescription, arguing plaintiffs' claims against Mary had prescribed on their face because she was not named as a defendant until a year and a half after the alleged accident. They then moved for summary judgment on March 11, 2016, specifically on, but not limited to, this issue. On April 18, 2016, the trial court heard the motion, which it denied without reasons through a judgment signed on May 20, 2016, the morning of trial.

Pursuant to La.Code Civ.P. art. 1732(A)(1) plaintiffs stipulated that each claimant's cause of action did not exceed $50,000; accordingly, the trial court tried this matter as a bench trial. During trial, both Lemoine and Cazelot testified about the alleged accident, the events that transpired soon thereafter, and their medical treatment. Lemoine also testified to her children's medical treatment. Barrere testified briefly regarding his truck and the damage it allegedly sustained in the accident as well as the various modifications he had made to it since the accident, specifically to the hitch and tires. Both Lionel and Mary recounted their movements on the day of the alleged accident and stated that neither of them was in an accident that day. They also testified about the lack of damage on their Jeep at the time of and after the alleged accident as well as its damage-free condition in July of 2014, when they sold the Jeep to Gloria Picot (Picot). Picot likewise testified there was no damage to the Jeep at the time of purchase. Gabrielle Kirkland, a State Farm Mobile Claim Representative, testified about her examination of the Jeep in August of 2014 as well as the pictures she took of the

3

Jeep at that time; these photographs were admitted into evidence and showed a black smudge on the front bumper, slightly left of center. She also testified regarding the measurements she took of Barrere's truck on the morning of trial. When asked to compare those measurements to the ones taken of the Jeep in August 2014, she determined the height of the present hitch would fall below the bumper of the Jeep. She conceded, however, she had not measured the truck prior to trial and did not know if anyone had measured the truck prior to the alterations to the hitch about which Barrere testified.

At the conclusion of evidence, the trial court took the matter under advisement. On June 3, 2016, the trial court issued its Reasons for Ruling, in which it found that a rear-end motor vehicle accident did occur at the fault of Mary and awarded damages to plaintiffs in the following amounts: $8,500.00 in general damages and $4,490.45 in special damages to Lemoine; $1,500.00 in general damages and $1,446.00 in special damages to Jaylynn Barrere; $1,000.00 in General Damages and $1,321.00 in special damages to Annlin Barrere; $7,500.00 in general damages and $3,573.48 in special damages to Cazelot. The trial court signed a Judgment in accordance therewith on June 30, 2016, wherein it further ordered defendants to bear all costs and dismissed with prejudice all claims against Lionel and State Farm UM. The plaintiffs and defendants both timely appealed the trial court's judgment.

## DISCUSSION

The defendants assign two errors to the trial court's judgment. First, they contend the trial court erred when it cast them in judgment for claims, they allege, had prescribed. Second, they also assert the trial court committed manifest error when it concluded plaintiffs met their burden of proving Mary was involved in the accident. Assigning one error to the judgment, plaintiffs argue the trial court

4

abused its discretion in its award of general damages to both Lemoine and Cazelot.[1] We will take each assignment in turn.

### Prescription

While the defense of prescription is typically asserted through a peremptory exception, prescription can also be raised in a motion for summary judgment. *Doe v. Jones*, 02-2581 (La.App. 1 Cir. 9/26/03), 857 So.2d 555. As previously observed, defendants first raised the defense of prescription in their answer to plaintiffs' amended petition and then again in their motion for summary judgment. Because defendants chose to use the latter procedure, our review of the trial court's denial of their motion for summary judgment would be *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Bardwell v. Faust*, 06-1472 (La.App. 1 Cir. 5/4/07), 962 So.2d 13, *writ denied*, 07-1174 (La. 9/21/07), 964 So.2d 334. However, defendants did not apply for supervisory writs concerning the denial of their motion. Rather, they challenge, as manifest error, the trial court's casting them in judgment when all claims against Mary were prescribed. It is now well established that an appellate court should not restrict its fact review to affidavits and pleadings in support of the motion for summary judgment where the denial of the motion for summary judgment is appealed after the matter has been fully tried. *Hopkins v. Am. Cyanamid Co.*, 95-1088 (La. 1/16/96), 666 So.2d 615. In so ruling, the supreme court explained:

> [O]nce a case is fully tried, the affidavits and other limited evidence presented with a motion for summary judgment—later denied by the district court—are of little or no value. Appellate courts should not rule on appeal after a full merits trial on the strength alone of affidavits in support of a motion for summary

---

[1] State Farm UM filed an answer to plaintiffs' appeal, asserting errors of the trial court should this court find merit in plaintiffs' appeal. Specifically, State Farm UM alleges, along with defendants, that the trial court erred in finding Mary was involved in the accident. Alternatively, State Farm UM also prayed for a reduction in the amount of damages awarded.

judgment that was not sustained in the district court. In such cases, appellate courts should review the entire record.

*Id.* at 624.

Accordingly, the traditional manifest error-clearly wrong standard of review of the entire trial record applies to our review of the trial court's factual findings on the issue of prescription. *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371 (La. 10/19/10), 48 So.3d 234. Nevertheless, we review the trial court's legal conclusion "simply to determine whether or not the trial court was legally correct[.]" *Dauzart v. Fin. Indem. Ins. Co.*, 10-28, p. 3 (La.App. 3 Cir. 6/2/10), 39 So.3d 802, 805.

In their motion and again before this court, defendants argue plaintiffs' claims against Mary were prescribed on their face because plaintiffs filed their amended petition, in which they first named Mary as a defendant, over a year and a half after the accident, well in excess of the one-year prescriptive period set forth in La.Civ.Code art. 3492. Regarding the timely-filed suit against Lionel and State Farm, defendants contend Lionel was never a viable defendant, and therefore, the suit against State Farm was, by default, a prohibited direct action under La.R.S. 22:1269(B)(1).[2] Defendants further argue that because plaintiffs' amended petition

---

[2] La.R.S. 22:1269(B)(1) provides:

> B. (1) The injured person or his survivors or heirs mentioned in Subsection A of this Section, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only; however, such action may be brought against the insurer alone only when at least one of the following applies:
>
> > (a) The insured has been adjudged bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured bankrupt have been commenced before a court of competent jurisdiction.
> >
> > (b) The insured is insolvent.

6

added an entirely new defendant, it could only relate back to the timely filed petition for the purposes of prescription if the amendment satisfied the criteria set forth in *Ray v. Alexandria Mall*, 434 So.2d 1083 (La.1983), which, based on the facts herein, they argue it did not.[3]

In response, plaintiffs argue their initial suit was properly filed against State Farm and its insured, Lionel, regardless of Lionel's current status in the litigation. As such, their claims were timely because Mary is a joint and solidary obligor with State Farm and "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors[,]" pursuant to La.Civ.Code art. 2324(C). Plaintiffs also contend their amendment met all of the *Ray* criteria to relate back to their original petition.

---

(c) Service of citation or other process cannot be made on the insured.

(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons.

(e) When the insurer is an uninsured motorist carrier.

(f) The insured is deceased.

[3] In *Ray*, 434 So.2d at 1087, the Louisiana Supreme Court established four criteria for determining whether La.Code Civ.P. art. 1153 would allow an amendment, which changed the identity of the parties sued, to relate back to the date of filing of the original petition for prescriptive purposes:

(1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;

(2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;

(3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;

(4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.

As defendants correctly stated, tort actions are subject to liberative prescription of one year. La.Civ.Code art. 3492. And it is not disputed that plaintiffs timely filed suit against Lionel and his insurer, State Farm, within one year of the alleged accident. By law, that timely-filed suit served to interrupt prescription against all solidary obligors: "Under Louisiana law, an insured and his liability insurer are solidarily liable, and suit against one solidary obligor interrupts prescription as to all, even if they are not named in the original complaint." *Ray*, 434 So.2d at 1084, n. 1. It follows, therefore, that the timely-filed suit against Lionel and, most importantly, State Farm interrupted prescription as to all those solidarily liable with them. Because State Farm, as her insurer, is solidary liable with Mary, the timely-filed suit interrupted prescription as to plaintiffs' claims against her as well. That interruption of prescription resulting from the filing of suit against Lionel and State Farm within the prescriptive period continues, by operation of law, "as long as the suit is pending." La.Civ.Code art. 3463. Therefore, prescription against Mary was still interrupted when plaintiffs added her as a named defendant through their amended petition.

Moreover, despite defendants' arguments to the contrary, when a plaintiff brings an action against the insured and his insurer, the direct action provisions under La.R.S. 22:1269(B)(1) are not implicated. *Soileau v. Smith True Value and Rental*, 12-1711 (La. 6/28/13), 144 So.3d 771. Because plaintiffs did not commence their action against State Farm alone, this is not a direct action, prohibited or otherwise. Therefore, the circumstances enumerated in La.R.S. 22:1269(B)(1) need not be satisfied as they never came into play in the first place.[4]

---

[4] Although defendants cite *Etienne v. National Automobile Insurance Company*, 98-1946 (La.App. 3 Cir. 6/23/99), 747 So.2d 593, *aff'd*, 99-2610 (La. 4/25/00), 759 So.2d 51, in support of their prohibited direct action argument, we note that case is clearly distinguishable because the plaintiffs therein for all intents and purposes sued the insurer alone. Herein, plaintiffs filed suit against a named insured, Lionel, who was the registered owner of the vehicle along with his

8

Finally, given that prescription was properly interrupted by the timely filing of suit against State Farm and its insured, there is no need for this court to discuss or apply *Ray's* relating-back criteria, which must be met to allow an amendment to relate back to the date of filing of the original petition. Simply put, an amendment does not have to relate back as long as prescription is interrupted by operation of law. Accordingly, we affirm the trial court's ruling on prescription.

We turn now to our review of defendants' remaining assignment of error in which they argue the trial court manifestly erred in finding plaintiffs carried their burden of proving Mary was involved in the alleged accident.

### *Finding of Fault*

It is firmly established that "[a]t trial, the burden of proof rests with the claimant seeking recovery to present sufficient evidence to establish by a preponderance of the evidence the facts necessary for it to recover." *Big D Dirt Servs., Inc. v. Westwood, Inc.*, 94-1234, p. 11 (La.App. 3 Cir. 3/1/95), 653 So.2d 604, 609. Elaborating on the "burden of proof," the supreme court stated in *Landiak v. Richmond*, 05-758, p. 8 (La. 3/24/05), 899 So.2d 535, 542:

> Generally, the legal term "burden of proof" "denotes the duty of establishing by a fair preponderance of the evidence the truth of the operative facts upon which the issue at hand is made to turn by substantive law." *Black's Law Dictionary* (8th ed). Under Louisiana's civil law, the "burden of proof" may shift back and forth between the parties as the trial progresses. Therefore, when the burden of proof has been specifically assigned to a particular party, that party must present sufficient evidence to establish the facts necessary to convince the trier of fact of the existence of the contested fact. Stated another way, the party on which the burden of proof rests must establish a *prima facie* case.

Undeniably, whether an accident occurred and what parties were involved in said accident are factual determinations of the factfinder that will not be disturbed

---

insurer, thus effectively precluding our application of the direct action principles as well as the *Etienne* jurisprudence. Notably, Lionel was not dismissed as a defendant until the trial court judgment was entered after a full trial on the merits.

9

on appeal absent manifest error. *Cenac v. Pub. Access Water Rights Ass'n*, 02-2660 (La. 6/27/03), 851 So.2d 1006. To find manifest error, a reviewing court must engage in a two-step process based on the record as a whole: (1) the court must find no reasonable factual basis for the trial court's conclusion exists, and (2) the court must then find the trial court's conclusion is clearly wrong. *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). Thus, the court must do more than simply review the record for some evidence that supports or controverts the trial court's factual findings; the court must also review all the record evidence to determine whether those findings were clearly wrong or manifestly erroneous. *Parish Nat'l. Bank v. Ott*, 02-1562 (La. 2/25/03), 841 So.2d 749. The issue for the reviewing court is not whether the judge was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

Though reasonable persons frequently can and do disagree, where there are two permissible views of the evidence, the factfinder's choice between them can almost never be manifestly erroneous or clearly wrong. *Rosell*, 549 So.2d 840. This is so because

> the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

*Canter*, 283 So.2d at 724.

Regarding the occurrence of the accident and the fault of the participants therein, the trial court, in its reasons, specifically noted all the witnesses "appeared

10

to testify in an extremely credible manner." The trial court further found it "quite evident" that Lemoine, Cazelot, and Barrere believed an accident occurred, whereas Mary did not. Moreover, although acknowledging that the resolution of these "he said – she said" accidents are largely based on credibility, the trial court reasoned the task herein was made "much less difficult" based on the photographic evidence admitted at trial. As he explained:

> It is extremely obvious that the accident at issue was a very minor accident, with very low impact. . . . It is also obvious that any impact occurred upon striking of the extended trailer hitch which was attached to the Chevrolet pick-up truck. The photograph introduced into evidence confirms that this trailer hitch did stick out beyond the bumper of the truck.

> [Lemoine and Cazelot] both testified in an extremely credible manner that there was white paint on the trailer hitch. Amazingly, evidence was introduced via Plaintiff's Exhibit No. 13 of an estimate of repairs performed by State Farm as the insurer of Johnathan Barrere, which estimate of repairs confirmed damage to the rear of the vehicle and the trailer hitch. Barrere's testimony was also extremely credible concerning his description of the pulling of the vehicle and other problems after the accident and the need to have the vehicle aligned and later new tires. Further, and amazingly so, at Trial, Gabrielle Kirkland, an employee of State Farm, testified about her examination of the white Jeep Grand Cherokee and measurements obtained in 2014. This was somewhat amazing due to the fact that there were no attempts to perform measurements on the truck at that time, with measurements made the day of Trial apparently without permission of the owner. Very strange, in the opinion of this Court. Also strange due to the fact that the testimony of Ms. Kirkland confirms some type of "smudge" on the front bumper of the Augustine vehicle, and described by her to reflect damage.

> Therefore, with damage to the alleged rear-ending vehicle and damage to the alleged rear-ended vehicle being confirmed, it is obvious that this accident occurred.

> This finding is in no way discounting or finding as not credible the testimony of Mary . . . . This Court is absolutely convinced that Mary . . . is of the opinion that no impact occurred. However, for several reasons, this Court finds that Mary is simply in error. It must be recalled that traffic was very heavy on this date, in a bumper to bumper fashion. [Lemoine] testified that she was stopped under the traffic light waiting for a vehicle ahead to turn left into the Avoyelles Parish Sheriff's Office. Having been in this situation on many occasions during the construction process of Highway No. 1, it is

11

clear that this bumper to bumper traffic was of such a nature wherein it is highly more likely than not that a following vehicle could strike a protruding object such as a trailer hitch. It is also quite obvious that this type of impact would not necessarily be felt by the driver of the vehicle in this bumper to bumper, stop and go traffic. Also, this Court is intimately aware with other situations wherein accidents occurred with driver's [sic] not being aware that they were involved in an accident.

Therefore, and based on the above findings, this Court does find that an accident occurred on May 22, 2014 and does find that the accident occurred as a result of the fault and/or negligence of Mary . . . .

As the preceding shows, the trial court clearly based its resolution of this matter on its credibility determinations and its observations of the various witnesses as well as on the photographic evidence and repair records/invoices/receipts admitted into evidence. Our review of the record in its entirety reveals no error on the trial court's part.

Both Lemoine and Cazelot testified, in agreement, regarding: (1) how the accident occurred while their truck was stopped in traffic on La. 1, (2) the make, model, and color of the vehicle—a white Jeep Grand Cherokee—that they alleged struck the rear-end of their vehicle, (3) their observance of that same Jeep continuing to travel north on La. 1 and subsequently turning into AutoZone, (4) how they located the Jeep in the AutoZone parking lot, took photographs of the vehicle, and saw an African-American woman, who they later identified as Mary at trial, in AutoZone,[5] (5) the damage to the Jeep, which they described as a little "scratch," "crack," or "dent" in the front bumper,[6] and (6) the white paint left on

---

[5] Defendants make much of Lemoine's and Cazelot's description of the alleged tortfeasor, particularly their description of Mary as wearing her hair in a ponytail and her age. However, at trial and in her deposition, Lemoine testified that she was not certain of the alleged tortfeasor's age "as some people's age is hard to determine," but that Mary, who is in her 50s, looked to be about 30 or 40 years old. Notably, Lemoine testified that she saw Mary get out of the Jeep and go into AutoZone. On cross-examination, Cazelot admitted that she never saw anyone "get in or out" of the Jeep, but on direct, she did identify Mary as the woman she saw in AutoZone and as the driver of the Jeep. Mary testified she "never" wore her hair in a ponytail in 2014.

[6] Although Lemoine admitted she did not get out of the truck in the AutoZone parking lot, she testified that she observed a "little indention" or "dent" in the front bumper of the Jeep. And

the truck's trailer hitch after the collision. They both also admitted they did not see the Jeep approach the rear of their vehicle and only noticed it after impact, but thereafter, they were able to visually follow the Jeep until it exited La. 1. Likewise, they conceded that they never saw the person actually driving the Jeep. Interestingly, though, their testimony regarding the unhurried and non-evasive conduct of the other driver lends support to the trial court's finding Mary most likely was unaware an accident had even occurred.

Expanding upon their testimony, Barrere detailed the alleged damage his truck sustained to its hitch, tires, and alignment. While the cell phone photographs of the truck and the Jeep as well as the photographs taken by the Marksville police were not available for trial, the damage to both the truck and the Jeep were corroborated by objective evidence of record, namely the invoices for the truck damage dated within a month or so of the alleged accident and the photos taken of the Jeep by State Farm just months after the accident. The timing of the accident was likewise supported by the objective evidence, specifically the incident report filed with the Marksville police. Further Mary's actual presence on La. 1 and in AutoZone was documented in the dated and time-stamped receipts and through her own testimony.

This evidence, taken in its entirety, does reasonably support the trial court's factual finding that plaintiffs met their burden of proving: (1) a collision more likely than not occurred between the truck and Jeep on La. 1 that day, and (2) Mary, as the driver of the following vehicle, was more likely than not at fault. The trial court's findings, therefore, are not clearly erroneous.

---

at trial, she affirmed the damage shown in the State Farm photographs admitted into evidence was where she recalled seeing the damage. Cazelot described the damage as a little "scratch" or "crack" in the front bumper.

13

However, in their attempt to invalidate these findings, defendants focus primarily on (1) plaintiffs' admissions that neither Lemoine nor Cazelot saw who was driving the Jeep when the accident allegedly occurred, (2) plaintiffs' flawed description of Mary, *see supra*, n. 5, and (3) plaintiffs' utter lack of objective evidence documenting the damage to either vehicle, *i.e.*, their failure to produce any of the photographs allegedly taken right after the accident.[7] They likewise rely heavily on their photographs of the truck and Jeep that they introduced into evidence as well as the testimony of the Augustines and Picot regarding the lack of damage to the Jeep at the time of the July 2014 sale.

Ironically, it was the photograph of the Jeep depicting the "black smudge" on the front bumper along with the concession of the State Farm agent, elicited by plaintiffs' counsel on cross-examination, that she "did find some type of . . . damage" to the bumper when she examined the vehicle in August 2014 that ultimately persuaded the trial court to find in plaintiffs' favor. Up until that point in the presentation of the evidence, this matter was essentially "he said-she said" with testimony supporting both positions. Defendants attempt to disregard the photographs' relevance by emphasizing that (1) neither Lemoine nor Cazelot described the damage to the bumper as a "smudge," *see supra*, n. 6, and (2) Lionel, Mary, and Picot all testified that the "smudge" was not on the Jeep at the time of the July 2014 sale. However, while she did describe the damage as merely a "dent," Lemoine also affirmed that the damage depicted in the photograph was where she recalled seeing it on the day of the accident. Ultimately, though, the veracity of the witnesses' conflicting accounts is a credibility determination that falls to the trial

---

[7] Cazelot explained Lemoine no longer had the cell phone with which she took the photographs of the Jeep. Lemoine testified that she saw officers take photographs of the truck but never actually saw the photographs. Additionally, Mary explained that, when she went to the police department, she was told that photographs had been taken, but she was never able to obtain them.

court's vast discretion and is almost never erroneous when both views of the evidence are permissible.

Throughout their briefs, defendants quote and cite to what they allege are discrepancies, pure assumptions, and mere speculation in the plaintiffs' accounts and descriptions of the accident, the tortfeasor, and the damage both vehicles sustained. This piece-meal recitation of the record evidence, however, is not sufficient to find manifest error when, as in this case, the record in its entirety reasonably supports the trial court's conclusion. Accordingly, we affirm the trial court's finding that an accident did occur as a result of Mary's fault.

Moving on, we now address plaintiffs' sole assignment of error in which they challenge the trial court's award of general damages to Lemoine and Cazelot.

### Abuse of discretion—General Damages

In accordance with well-established law, "much discretion must be left to the judge" in the assessment of quantum, both general and special damages. La.Civ.Code art. 2324.1. As a determination of fact, a judge's assessment of quantum, or the appropriate amount of damages, is one entitled to great deference on review. *Guillory v. Lee*, 09-75 (La. 6/26/09), 16 So.3d 1104. "Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review." *Id.* at 1117. Accordingly, a reviewing court should only increase or reduce an award

> when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances . . . .
>
> Only after an abuse of discretion is disclosed by an articulated analysis of the facts is an examination of prior awards in similar cases proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is

15

> reduced to the highest amount the trier of fact could have reasonably awarded. . . .
>
> Before a trial court's award of damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the instant case. A damage award should not be disturbed by the reviewing court absent a showing of a clear abuse of discretion.

*Plaissance v. McDonald*, 03-1043, p. 4 (La.App. 3 Cir. 2/4/04), 865 So.2d 1004, 1008, *writ denied*, 04-585 (La. 4/23/04), 870 So.2d 305 (quoting *Hunt v. Long*, 33,395, pp. 4-5 (La.App. 2 Cir. 6/21/00), 763 So.2d 811, 815).

"The primary considerations in assessing damages are the severity and duration of the injured person's pain and suffering." *Francis v. Brown*, 95-1241, p. 13 (La.App. 3 Cir. 3/20/96), 671 So.2d 1041, 1049 (citing *Andres v. Liberty Mut. Ins. Co.*, 568 So.2d 651 (La.App. 3 Cir.1990)).  Herein the trial court specifically found Lemoine and Cazelot suffered minor injuries, which had resolved or stabilized by the time of trial.  Given the minor nature of the injuries coupled with their resolution, our review of the entirety of the record evidence reveals no clear abuse of discretion in the trial court's general damage awards to Lemoine and Cazelot.

### *Award to Lemoine*

In its reasons, the trial court discussed Lemoine's injuries and how she initially did not suffer much pain or discomfort, but then presented to Dr. Dixie Clement with complaints of stiffness in her back and neck several days after the accident.  She also suffered headaches and anxiety and had increased pain with the daily activities associated with motherhood.  All of these injuries showed signs of improvement or stabilization with the medication Dr. Clement prescribed. The record shows Lemoine visited Dr. Clement on several occasions between May 28, 2014 and October 14, 2015.  Improvement was to such a point that later in her

treatment with Dr. Clement, plaintiff's main complaint was insomnia and hand numbness. Overall, the trial court found Lemoine's injuries were minor and her problems had obviously resolved. Considering all the evidence, the trial court concluded:

> [I]t is clear that [Lemoine] has sustained damage in the form of personal injuries, as reflected in her various physical ailments. It is obvious that these issues were mostly soft tissue in nature although her complaints included neck pain, headaches, hand numbness and aggravation to her pre-existing condition of anxiety. Considering all facts, this Court awards to [Lemoine] the sum of $8,500.00 [in general damages.]

Plaintiffs contend that this award is abusively low and should be increased to $43,000.00 given Lemoine's sixteen-month period of injury and treatment. However, plaintiffs fail to establish a clear abuse of the trial court's vast discretion. Rather, the record more than reasonably shows the accident was very minor, with such a low impact that the party-at-fault did not even feel the "bump." With the equally reasonable finding by the trial court that the injuries were mostly minor and soft tissue in nature, which consistently improved and ultimately resolved, plaintiffs have failed to show a clear abuse of discretion on this record. Therefore, given the relatively minor impact and the equally minor injuries complained of— neck pain, headaches, hand numbness, and aggravation of pre-existing anxiety— the trial court's award is clearly reasonable and supported by the record evidence as well as our prior jurisprudence upon which the trial court relied. *See Turner v. Escobedo*, 12-72 (La.App. 3 Cir. 5/16/12), 89 So.3d 537 (affirming $5,500.00 award for migraines and neck pain); *Johnson v. State Farm Ins. Co.*, 09-667 (La.App. 3 Cir. 12/9/09), 27 So.3d 307 (affirming $8,500.00 award for bruises; contusions to back, head, and side; and headaches).

17

*Award to Cazelot*

Similarly, Cazelot testified she sustained pain to her neck and lower back and suffered panic attacks after the accident. Cazelot first presented to Dr. Clement with "lots of pain" on May 28, 2014. She also testified her work activity caused increased pain, but that her pain was somewhat relieved by the medicine Dr. Clement prescribed. The record further establishes Cazelot was involved in another accident in February 2015. Against this backdrop, the trial court found:

> It appears that [Cazelot]'s condition had stabilized with use of the medication prior to the subsequent February accident. As a result of that accident [Cazelot]'s complaints increased with many of the new issues clearly being related to the subject accident. However, [Cazelot] did continue with neck pain which clearly was aggravated by the subsequent accident. [Cazelot] last visited Dr. Dixie Clement on September 18, 2015.
>
> It is abundantly clear that [Cazelot] was injured in the subject accident, however, the injuries she sustained were minor. Her neck injuries were made worse by the subsequent accident. [Cazelot]'s overall condition concerning this accident is similar to that of [Lemoine].
>
> The Court awards general damages to [Cazelot] in the sum of $7,500.00[.]

As with Lemoine's award, plaintiffs submit the trial court's award to Cazelot is abusively low and should be increased to $43,000.00 given the overall length of her injury and treatment. However, they again fail to show an abuse of discretion on this record, particularly given the minor impact and the minor injuries, which the trial court found had stabilized prior to the February 2015 accident. Therefore, we cannot find the general damage award to Cazelot is an abuse of the trial court's vast discretion. Accordingly, we affirm the trial court's general damage awards to Lemoine and Cazelot.

**DECREE**

For the reasons discussed above, we affirm the trial court's judgment.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules–Courts of Appeal, Rule 2-16.3.